[Civ. No. 20353. Second Dist., Div. One. Dec. 15, 1954.]

JOSEPH L. KROISS, Appellant, v. MARSHALL BUTLER et al., Respondents.

Morton J. Salsberg for Appellant.

Murchison & Cumming for Respondents.

DRAPEAU, J.— The first cause of action of the complaint herein alleges that on November 30, 1952, defendant requested plaintiff to accompany him on a trip to hunt quail in Ventura County, in consideration of plaintiff's hunting experience and knowledge of the location of game in said locality.

Just before 4 o'clock in the afternoon of that day, defendant was driving his truck southerly on Highway 101, a divided freeway. Without warning to plaintiff, he crossed over to the opposite side of the freeway into the northbound

traffic lane. And as he was so driving his truck unlawfully and negligently in a southerly direction on the wrong side of the freeway, he collided with an automobile traveling north in the northbound traffic lane.

The second cause of action alleges willful misconduct of defendant in the operation of his truck on the wrong side of the freeway.

The prayer of the complaint asks judgment for $158,000 against defendant for the alleged injuries sustained by plaintiff in the collision.

The answer admits that defendant and plaintiff were on a hunting trip and that a collision occurred. It denies generally and specifically every other allegation of the complaint. As an affirmative defense it is alleged "that the accident, injuries and damages, if any, were caused by an unavoidable and inevitable accident," and that plaintiff was riding in the truck "voluntarily, as a guest."

At the conclusion of the trial on the issues so joined, defendant made a motion for a nonsuit and for a directed verdict which was denied. And the jury returned its verdict assessing plaintiff's damages at $17,300. On the very same day, i.e., July 15, 1953, defendant moved for judgment notwithstanding the verdict, reserving the right to move for a new trial. Argument on the motion was continued by stipulation until July 20th, at which time it was submitted.

In the meanwhile, i.e., on July 16, 1953, judgment on the verdict was filed and entered.

On August 7th, the court denied defendant's motion for judgment, notwithstanding the verdict and the order of denial was filed on August 10th.

On August 15th, notice of entry of judgment was served by plaintiff on defendant and presented for filing.

On August 17th, defendant's notice of intention to move for a new trial was filed and September 25th was set as the date of hearing same.

On September 11th, plaintiff filed notice of intention to move to dismiss defendant's motion for new trial because it was filed too late. Plaintiff also filed notice of motion nunc pro tunc to correct date of entry of judgment from July 16 to August 7, pursuant to section 664, Code of Civil Procedure.

On September 30th, the trial court granted plaintiff's motion to correct date of entry of judgment, and also granted defendant's motion for a new trial. The court denied plaintiff's motion to dismiss defendant's motion for new trial.

Plaintiff has appealed from the order granting a new trial and also from the order denying his motion to dismiss defendant's motion for new trial.

It is first urged that the trial court was without jurisdiction to hear respondent's motion for new trial. This for the reason that the notice of intention to move for a new trial was not filed or served within the time prescribed by sections 629 and 659 of the Code of Civil Procedure, as amended in 1951.

Section 629, *supra*, has reference to motions for judgment notwithstanding the verdict. It provides, among other things, that such motion may be made *either before or after entry of judgment* reserving the right to move for a new trial, and if made *after* entry of judgment, it shall be made within the period specified by section 659, *supra*, as to filing and serving notice of intention to move for new trial.

Section 659, *supra*, reads as follows:

"The party intending to move for a new trial must, either (1) before entry of judgment and, where a motion for judgment notwithstanding the verdict is pending, then within five (5) days after the making of said motion, or (2) within ten (10) days after receiving written notice of the entry of judgment, file with the clerk and serve upon the adverse party a notice of his intention to move for a new trial, designating the grounds upon which the motion will be made . . . The time above specified shall not be extended by order or stipulation."

So far as this court has been able to ascertain, section 659 of the Code of Civil Procedure, as amended in 1951, has not been judicially construed.

However, in an article by Mr. Alexander Macdonald of the Los Angeles Bar, entitled "New Procedure Affecting Motions for New Trial," published in the Journal of the State Bar of California, volume XXVI, page 299, it is stated at page 302:

"The amendment of section 659 requires little comment. Its obvious purpose is to speed up the making of the motion for a new trial *when made before* the entry of judgment, inasmuch as, when a motion n.o.v. is made, section 664, Code of Civil Procedure, automatically stays entry of judgment until the court has ruled on the motion." (Emphasis added.)

Pursuant to section 629, *supra*, a motion for judgment notwithstanding the verdict may be made either before or after entry of the judgment. And it is obvious that the language used in section 659, *supra*, contemplates that a

motion for a new trial may likewise be made either before or after entry of the judgment. In other words, a litigant may (1) either make his motion for a new trial before entry of the judgment and while his motion for judgment notwithstanding the verdict is pending, or (2) he may wait and make his motion for a new trial after his motion for judgment notwithstanding the verdict has been decided and the judgment entered.

Instead of moving for a new trial before the judgment was entered and while his motion for judgment notwithstanding the verdict was pending, respondent chose to follow subdivision (2) of section 659, *supra*: Entry of the judgment was automatically stayed by section 664, *supra*, until the court rendered its decision on the motion for judgment notwithstanding the verdict, to wit, on August 7, 1953. Respondent received notice of such entry on August 15, 1953. Two days later, on August 17th, he filed and served his notice of intention to move for a new trial. From this it follows, that the instant motion for new trial was made well within the 10 day period prescribed by subdivision (2) of section 659, and the trial court had jurisdiction to hear and decide it.

Appellant next contends that the trial court abused its discretion by granting a new trial on the ground of insufficiency of the evidence to justify the verdict. This for the reason that he was a passenger for compensation, and that "there was overwhelming evidence at the trial, and no evidence in contradiction thereto, to remove appellant from the status of a guest," as defined by section 403 of the Vehicle Code.

That section provides: "No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has a right of action for civil damages against the driver of such vehicle or against any other person legally liable for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver."

Appellant testified that on the day in question he went to respondent's store to pick up some groceries. Respondent suggested that they go quail hunting that afternoon. Appellant was reluctant to accept because he had other work to do. Respondent persuaded him to go. It started to rain and they decided to call off the hunting trip. Appellant went on

home. About 1 o'clock it cleared and respondent drove up to appellant's house and said: "Let's go out and hunt, see if we can get some birds."

They went out as far as Conejo grade in Ventura County where they hunted on the south slope. Appellant further testified that he had been hunting quail for 20 or 25 years; that in tracking quail a hunter had to have knowledge of the type of terrain offering seclusion, cover and feed for the birds; ability to issue a quail call or whistle, and to recognize signs on the ground, i.e., tracks and wallows. When he started on this trip it was his purpose to use his ability and knowledge to locate quail. He had known respondent for seven or eight years. They were friends and had previously hunted quail at various places. On this particular occasion he agreed that respondent should use his truck for the trip, but there was no discussion as to payment of costs. Each man had his own gun and shells. Appellant felt that he had greater knowledge than the average in recognizing quail tracks, but he did not communicate this feeling to respondent and the latter made no mention of it, either.

Respondent Butler testified that he considered himself as good a hunter as appellant. At the time in question they had no discussion regarding their relative abilities or knowledge of quail hunting. Respondent selected the place in which to hunt; they got no birds and decided to go to another place, i.e., to Thousand Oaks on their way home and do a little hunting there.

On cross-examination, respondent testified he had been hunting for 25 years; knew the neighborhood and had been to Thousand Oaks before.

"The designations 'passenger' and 'guest' have been adopted for the purpose of distinguishing a person who has given compensation within the meaning of section 403 of the Vehicle Code from one carried gratuitously. (*Kruzie* v. *Sanders*, 23 Cal.2d 237, 241 [143 P.2d 704].) A person who accepts a ride does not cease to be a guest and become a passenger merely by extending customary courtesies of the road, such as paying bridge or ferry tolls (see Rest., Torts, § 490, comment a), and it has been held that the sharing of expenses does not destroy the host and guest relationship if nothing more is involved than the exchange of social amenities and reciprocal hospitality. (*McCann* v. *Hoffman*, 9 Cal.2d 279 [70 P.2d 909].) Where, however, the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence

for furnishing the transportation, the rider is a passenger and the driver is liable for ordinary negligence. (Citation of authorities.) This is, of course, true whether the trip is for the joint pleasure of the participants or is of a nonsocial nature.'' *Whitmore* v. *French,* 37 Cal.2d 744, 746 [235 P.2d 3].

 The burden of proving that he was not a guest was upon appellant. (*Gosselin* v. *Hawkins,* 95 Cal.App.2d 857, 860 [214 P.2d 110] ; *Whittemore* v. *Lockheed Aircraft Corp.,* 65 Cal.App.2d 737 [151 P.2d 670].)

 This appellant failed to do in the case now under consideration. The evidence produced and hereinbefore recited, was clealy insufficient to establish that appellant was a passenger instead of a guest.

Appellant finally asserts that respondent was guilty of wilful misconduct in that he drove his truck on the wrong side of a divided freeway with a knowledge that serious injury would probably result and with a wanton and reckless disregard of its possible result.

Wilful misconduct within the contemplation of the guest statute is defined in 7 California Jurisprudence 2d 225, section 337, ''as intentionally doing something in the operation of a motor vehicle which should not be done, or failing to do something which should be done, under circumstances disclosing knowledge, express or implied, that an injury to a guest will probably result. It necessarily involves deliberate, intentional, or wanton conduct in doing, or omitting to do, acts with actual knowledge of the peril involved, and with knowledge, express or implied, or appreciation of the fact that an injury is likely to result therefrom, although there need be no deliberate intention to injure the guest. . . . It means more than mere negligence, however gross, but less than the conventional intentional tort, such as trespass, assault or battery. To render the operator liable to a guest there must be misconduct as distinguished from negligence and the misconduct must be wilful.''

In *Stacey* v. *Hayes,* 31 Cal.App.2d 422 [88 P.2d 165], the court held that a finding of misconduct was not sustained by evidence that defendant, while operating his car around a curve and down a gentle grade at 30 or 35 miles per hour, drove it 21 inches over the center line of the highway and into the path of an oncoming vehicle.

In the cited case it was said at page 426 : ''The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute 'wilful misconduct' there must be actual knowledge, or that which

in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Helme* v. *Great Western Milling Co.*, 43 Cal.App 416 [185 P. 510].)''

■ Respondent Butler testified that he and appellant were on their way home driving easterly in the southerly portion of Highway 101, and that he drove onto the wrong side of the highway by mistake. That when he turned from the southerly portion into the right-hand lane of the northerly portion of the divided highway, he thought he was on the road that turned off to Thousand Oaks. After he had gone 75 to 100 yards he saw the Waite car approximately 600 yards down the highway coming toward him on the same side of the highway. He then realized for the first time that he was on the wrong side of the highway. Prior to the time he saw the oncoming car, he was traveling at 40 to 45 miles per hour. When he saw the Waite car he stepped on his brakes and ''slowed down very slow,'' to 15 or 20 miles. At the time of the collision his car ''was almost stopped,'' to five or seven miles per hour. He remained in the right-hand lane ''creeping along.'' It had been raining the night before and the lane to the left was very muddy. He just barely turned to the left when the two cars collided. There were no other cars in the immediate vicinity at that time.

Appellant Kroiss had no memory as to how the accident occurred. He had not been able to remember anything from the time respondent's car reached the top of the Conejo grade.

In answer to the question: ''Now, Mr. Kroiss, did you have any particular thing in mind as to what Mr. Butler did that was wilful?''—appellant replied: ''I don't remember anything about it.''

In this state of the evidence, the propriety of the trial court's action in granting a new trial cannot be questioned.

■ A motion for a new trial should be granted whenever in the opinion of the trial judge the evidence is insufficient to justify the verdict. ■ And his ruling on such motion will not be reversed ''unless it is affirmatively shown or manifestly appears that he has abused the sound discretion confided to him.'' (*Lopez* v. *Capiti*, 114 Cal.App.2d 544, 548 [250 P.2d 616].)

No such abuse appears here.

The order granting motion for new trial is affirmed. The appeal from the order denying motion to dismiss motion for new trial is dismissed as it is not an appealable order. (*Griess* v. *State Inv. & Ins. Co.,* 93 Cal. 411 [28 P. 1041].)

White, P. J., and Doran, J., concurred.