[Civ. No. 20296.   Second Dist., Div. Three.   Jan. 21, 1955.]

SIDNEY E. DAVIS et al., Respondents, v. CHARLES LEWIS OLDENDORPH et al., Appellants.

Bauder, Gilbert, Thompson & Kelly for Appellants.

Krag & Sweet and Donald R. Krag for Respondents.

WOOD (Parker), J.—Action for damages for wrongful death of the son of plaintiffs allegedly caused by the wilful misconduct of defendant Charles Oldendorph in the operation of his automobile while the son was a guest in the automobile. Motion for nonsuit was granted as to defendant Smith. In a trial by jury judgment was for plaintiffs against defendants Charles Oldendorph and his parents who signed his application for an operator's license. Defendants' motion for a new trial was denied, and they appeal from the judgment.

Appellants contend that the evidence is insufficient to establish wilful misconduct.

The accident occurred on Sunday, May 25, 1952, about 3:30 p. m., three miles south of Palmdale. The main traveled

portion of the highway is 20 feet wide, is paved, and has two traffic lanes. A paved shoulder about 8 feet wide is on each side thereof. On the highway, near the scene of the accident, there is a crest of a grade. The grade on the north side of the crest is much steeper than the grade on the south side. The grade on the south side is about 400 feet in length, and at a point about a quarter of a mile south of that grade there is a curve in the highway. Subject to the provisions of the basic speed law (Veh. Code, § 510), the prima facie speed limit in the vicinity of the accident was 55 miles an hour. It was a clear day.

Defendant Charles Oldendorph, who was then 20 years of age, was driving his Mercury automobile south on the highway. John Davis (son of plaintiffs), who was 17 years of age, was sitting in the front seat beside Charles. Defendant Smith was driving his Ford pickup truck north on the highway.

Defendant Charles Oldendorph testified that as he was traveling in a southerly direction up the grade he went into the lane for northbound traffic and started to pass two or three automobiles which had been traveling ahead of him in the southbound lane. It is possible that he was about 200 yards from the crest of the hill when he started to pass. He could not see over the crest of the hill but he thought he would be able to go around the automobiles and then get back into the southbound lane before he reached the crest of the hill. He did not sound his horn. When he was going up the grade and was alongside the front automobile (the front one of those he was trying to pass) he saw the pickup truck (in the lane for northbound traffic) and it seemed that it "popped over" the crest, and "it looked pretty far away." He (Charles) applied his brakes but did not try to get back to his right (the southbound lane). His automobile and the truck collided on the (east) shoulder of the highway. He testified further that prior to the accident he was traveling 40 or 45 miles an hour and his automobile was in overdrive. He possibly accelerated his speed while passing the automobiles. He did not try to get his automobile out of overdrive and into high gear—so that he could go faster. John did not protest or find any fault with the way Charles was driving.

John died as a result of injuries received in the collision.

Defendant Smith testified that after he came around the curve in the highway he saw three automobiles in the southbound lane and then he saw the Mercury which was coming

over the top of the crest, about a quarter of a mile away, on his (Smith's) side of the highway and passing the third automobile "back" (from Smith) in the southbound lane. It was traveling 60 to 70 miles an hour. It "got even with the second car," but did not get around it. He (Smith) saw that Charles was not going to make it and Smith swung his automobile to the right and applied his brakes. At that time he was 250 or 300 feet from the Mercury, and the collision occurred about five seconds thereafter. He (Smith) thought that Charles had plenty of time to get between the second automobile he was passing and the one ahead of it— there were 40 to 50 feet between those automobiles.

A police officer, called as a witness by plaintiffs, testified that he arrived at the scene of the accident about 4:05 p. m. The truck and the Mercury had not been moved after the collision, and they were close together. The front of the truck was badly damaged and the right side of the Mercury was caved in. The impact of the vehicles occurred approximately 600 feet south of the crest of the grade. The point of impact was about 18 feet east of the center line of the highway on the (outside) edge of the paved shoulder where it joins the dirt. The truck left skid marks which commenced 6 feet east of the center line of the highway and continued for a distance of 78 feet. The Mercury left skid marks which also commenced on the east side of the center line and continued for a distance of 141 feet. He testified further that about two hours after he left the scene of the accident he went to the hospital and had a conversation with Charles. Charles told him he was going uphill passing two or three automobiles, and when he came over the crest he saw the truck. He could not complete the passing without crowding one of the southbound cars off the highway so he headed for the left shoulder.

Plaintiff Sidney Davis testified that about two weeks after the accident, Charles told plaintiffs, in the presence of Charles' parents, that he believed that John was asleep at the time of the accident—that he had made no motion or comment just prior to the accident.

Section 403 of the Vehicle Code provides that "No person who as a guest accepts a ride in any vehicle . . . has any right of action for civil damages against the driver of such vehicle . . . on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such

action establishes that such injury or death proximately resulted from the . . . wilful misconduct of said driver.''

Appellants argue, as above stated, that the evidence is insufficient to establish wilful misconduct; and in the case at bar, ''at best, nothing except the violation of the overtaking statute on an ascending grade appears.'' It was stated in *Jones* v. *Harris,* 104 Cal.App.2d 347, 351 [231 P.2d 561], that ''Wilful misconduct is divided into two distinct lines of action, either of which will render a driver liable to his guest for its results, as follows: first, 'the intentional doing of something with a knowledge that serious injury is a *probable* (as distinguished from a possible) result'; and second, 'the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' '' It was further stated therein (p. 352), in quoting from another case, that ''one who, while driving an automobile, knowingly flirts with danger and, without necessity or emergency compelling him, 'takes a chance' on killing or injuring himself and others, who may be so unfortunate as to be riding with him, is guilty of wilful misconduct.''

In the present case the evidence shows that defendant Charles, while driving at a speed of approximately 70 miles an hour on the wrong side of a two-lane roadway and within 200 yards of the crest of a grade, was trying to pass two or three automobiles which were traveling in the same direction he was traveling. His view was obstructed as he so approached the crest of the grade. There was evidence that as he came over the crest of the grade he was passing the automobile which had been immediately in front of him in the southbound lane. He traveled about 600 feet on the wrong side of the roadway after he reached the crest, and then he collided with the truck which was on its proper side of the roadway. There was no evidence that he made any attempt to return to his proper side of the roadway. ■ As was stated in *Hastings* v. *Serleto,* 61 Cal.App.2d 672, 682-683 [143 P.2d 956], ''[T]he question of whether the defendant driver herein intentionally drove his automobile with a wanton and reckless disregard of the possible result of such driving or whether he intentionally drove his automobile with a knowledge, express or implied, that serious injury would be a probable (as distinguished from a possible) result thereof, is essentially one of fact for determination by the fact finder.''

■ The implied finding of the jury that defendant Charles was guilty of wilful misconduct which was a proximate cause of the accident is amply supported by the evidence.

Appellants contend further that the court erred in reading sections 528, 530 and 671 of the Vehicle Code to the jury and in refusing to instruct the jury that "the mere violation of these sections" did not constitute wilful misconduct.

Section 528 provides, in part, that, "a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle."

Section 530 provides, in part, that on a roadway having two lanes, "no vehicle shall be driven to the left side of the center line . . . in . . . passing another vehicle proceeding in the same direction unless such left side is . . . free of oncoming traffic for a sufficient distance . . . to permit such . . . passing . . . without interfering with the safe operation of any vehicle . . . [T]he overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction. (b) No vehicle shall at any time be driven to the left side of the roadway . . .: 1. When approaching the crest of a grade . . . where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction."

Section 671 provides, in part, that "(a) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order. . . . (b) The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. . . ."

■ Appellants argue to the effect that since those sections were read to the jury, the court should have given appellants' requested instruction which was as follows: "You have been, or will be, instructed in regard to certain vehicle code sections. You are hereby instructed that a violation in and of itself of any or all of the vehicle code sections referred to in these instructions would not constitute wilful misconduct." It was not error to refuse to give that instruction. The expression "a violation in and of itself" is not clear. That expression does not convey any meaning with respect to what kind of violation was intended to be referred to or with respect to the kind of conduct that might be involved in violating the sections. Of course, under certain circumstances, the conduct of a driver in violating section 528 or section 530 might constitute wilful misconduct. In any event, the court gave an instruction,[1] requested by defendants, defining wilful mis-

conduct. That instruction included a statement to the effect that even if Charles did something that was wrongful in the operation of his car, still a case of wilful misconduct was not established unless his conduct was characterized by that element of wantonness and reckless disregard of the possible results as explained in the instructions. By that instruction the jury was advised in effect that unless a Vehicle Code section was violated with wanton and reckless disregard of the possible results, such violation would not constitute wilful misconduct. The jury was instructed adequately.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 16, 1955. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.

---

[1]"It is admitted . . . that at the time of the accident . . . deceased Davis was a guest in the automobile operated by Charles Lewis Oldendorph. Under our law the driver Charles Lewis Oldendorph, was not obligated to exercise ordinary care in the operation of the automobile he was driving at the time of the accident. His only legal obligation was to refrain from . . . wilful misconduct. . . . Therefore . . . you could award damages to the plaintiffs . . . only in the event you should first find that Charles . . . was guilty of wilful misconduct as that term is defined to you in these instructions.

"The words 'wilful misconduct' have a meaning in law additional to that which they have in common usage. . . .

"You are instructed that in order to be a basis of liability to a guest under our law the wilful misconduct must be something more than intentional and wrongful. It must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results.

"[W]ilful misconduct is something more than what might even be called gross negligence. A guest may not recover against his host driver or . . . owner of the vehicle . . . for the negligence of the driver, however such negligence . . . might be classified. The acts and conduct of the driver must amount to wilful misconduct as that term is defined to you herein before the guest, or the heir of a deceased guest, has any right of action.

"It follows, therefore, that even if you find that Oldendorph was negligent in the manner in which he operated his car immediately prior to and at the time and place of the accident, and if you further find that Oldendorph intentionally did something that was wrongful in the operation of said car and which was a proximate cause of the death of young Davis, still a case of wilful misconduct has not been established . . . unless you should further find from a preponderance of all the evidence that young Oldendorph's conduct was characterized by that element of wantonness and reckless disregard of the possible results as heretofore explained to you in these instructions. . . ."