[Civ. No. 5412.   Fourth Dist.   Sept. 19, 1956.]

JACK BAKER, Appellant, v. ANTON NOVAK, Respondent.

William Murray Hill and Murry Luftig for Appellant.

Luce, Forward, Kunzel & Scripps for Respondent.

BURCH, J. pro tem.*—Plaintiff Jack Baker sues defendant Anton Novak to recover for damages he received when the ''jeep'' in which the parties were riding went out of control and catapulted into a canyon. The accident occurred at about 4:30 p. m. November 11, 1954, while Novak was driving the ''jeep'' in an easterly direction on United States Highway 76 at a point approximately 6 miles southeast of a junction known as Rincon Springs in San Diego County.

Trial by jury resulted in a general verdict for defendant. Plaintiff appeals from the judgment entered upon the verdict.

The complaint alleges that plaintiff was a passenger at the time of the accident. He contends upon appeal that the court committed prejudicial error in failing to instruct the jury that plaintiff was a passenger as a matter of law, whereas, the court, considering the question was in conflict, left the matter to the jury as a question of fact. Plaintiff is entitled to a ruling on whether or not plaintiff was a passenger as a matter of law, even though the jury's general verdict could find support in plaintiff's failure to prove to the jury by a preponderance of the evidence that defendant was guilty of negligence which proximately contributed to his injuries, and thereby justifying the verdict for defendant. ▐ Although the record indicates that the jury might have based its verdict on the absence of negligence it appears to be settled law, though with some debate, that prejudicial error results ''in submitting to the jury as a question of fact'' an issue on compensation for a ride ''that on the record was one of law'' (*Huebotter* v. *Follett,*

---

*Assigned by Chairman of Judicial Council.

27 Cal.2d 765, 770 [167 P.2d 193]), even though the record shows the verdict would be supported because of failure to establish negligence.

In considering the question of status as guest or passenger within the meaning of Vehicle Code, section 403 (the guest law), we center our attention upon the phrase therein requiring "compensation." The terms "guest," "passenger," and "compensation" are legal concepts in relation to the guest statute which carry the meanings given to them, respectively, by a long line of decisions from which it appears that the circumstances of each case fit more readily into one or the other of the two categories, guest or passenger, covered by the statute. Conceivably a rider may give a stipulated compensation, money or something else of value, to the driver, and come under the protection of the general law of negligence. But conceivably also the driver, motivated by sheer good will, may invite or permit to ride the well-known "hitchhiker" who loses his right thereby to compensatory damages for negligence, but must prove injuries caused by the driver's intoxication or wilful misconduct. These various decisions have been reviewed exhaustively in *Martinez* v. *Southern Pac. Co.*, 45 Cal.2d 244 [288 P.2d 868], and the line of demarcation there drawn indicates to us that the jury could in this case draw an inference that Mr. Baker was either one or the other. It is the function of the jury to draw that one of the two possible inferences supplied by the evidence offered upon the decisive question: Did Mr. Baker confer upon Mr. Novak a benefit within the meaning of compensation as used in the statute, or did Mr. Baker at his own request go along for the fun of the ride. The ultimate fact to be determined is whether he did or did not give compensation for the ride.

The record discloses evidence for and against the legal concepts of "passenger" and "guest." The parties were friends. Novak testified: "Well, I think I have known him (Mr. Baker) about a year before this accident. . . . The first time I ever met him was he stopped in at the station and wanted to know if he could leave a little radio he had there for some money, take his wife to the hospital. So I give him enough money to take her up to the doctor. And a few days later he picked his radio up. . . . Yes, he brought Dean (Mr. Dean Cabble, Mr. Baker's son-in-law) down one day and asked me if I would give him a job, and I did." Novak and Cabble went on a uranium hunt in the fall of 1954, but found no uranium. Novak and his wife had been on two uranium hunts

before that, but none was found. "Q. Now when you returned from your trip with Mr. Cabble you arrived back a short period before you went on your trip with Mr. Baker; is that right? A. Yes, four days, I guess. Q. Was Mr. Baker working there at the station when you got back? A. Yes, he was. Q. And did Mr. Cabble then take over? A. Yes. Q. Now was Mr. Baker living there on your premises when you first came back from the trip? A. Well, he had a small truck, he had a bed in back of it, and he lived there, I guess. . . . Q. Now, when you originally planned to go on this second trip after coming back from Arizona with Mr. Cabble did you originally plan to go with Mr. Baker or with your wife? A. I was planning on taking my wife. Then Jack wanted to go so I took Jack. . . . Q. Did you have any conversation with Mr. Baker before leaving about sharing of expenses or groceries or gas and oil? A. No. Q. Did Mr. Baker contribute anything toward the purchase of the groceries? A. He never gave me anything. Q. Did he pay you anything for the gas and oil? A. No. Q. Did he say to you that he would? A. There was nothing mentioned about he would or he wouldn't."

On examination under section 2055 of the Code of Civil Procedure Mr. Novak testified that the trip was headed for Palm Springs as a likely place to find uranium and that this was at Mr. Baker's suggestion; that they were equipped with a Geiger counter, a couple of small shovels, bed rolls and a tent. Mr. Novak had previously testified in a deposition:

"Q. Was Jack Baker sharing the expenses of the trip, the ride? A. Yes. Q. And what was he to give you for that or what did he give you? A. Well, he put in half the gas and half the groceries and that was it. . . ."

The witness continued under section 2055, *supra*:

"Mr. Cabble and I got back on a trip before Jack and I left on this one. And him I and I shared expenses. . . . Dean had $13 and I put the rest of the money into the trip. So I figured this would be the same way. That would be all. There was nothing mentioned about money or anything else."

A suggestion is also made that certain work was performed by Mr. Baker with others upon the jeep, putting in new rings and giving it a general overhaul, and that this, being in anticipation of the trip, was contributed as far as Mr. Baker was concerned, as compensation, to bring him into the category of a passenger and not a guest. We think we have

quoted sufficiently from the record to show that the parties evidenced a situation with regard to ''compensation'' which would make the question one of fact and not one of law.

The probative facts, in our view, do not establish as a matter of law that Mr. Baker was a passenger or that he was a guest. The hunt by Mr. Novak for uranium may have been purely by way of recreation from work, and he may have acceded to Mr. Baker's request to go along solely to accommodate a wish of a friend and to enjoy his company. Many people we think might envisage such a trip as pure fun, and Mr. Baker could be among them for all we find in the record. We think the court properly left the question to the jury insofar as the Geiger counter, pick and shovels affected the issue.

'' 'The designations ''passenger'' and ''guest'' have been adopted for the purpose of distinguishing a person who has given compensation within the meaning of section 403 of the Vehicle Code from one carried gratuitously.' (*Thompson* v. *Lacey,* 42 Cal.2d 443, 444 [267 P.2d 1] ; *Whitmore* v. *French,* 37 Cal.2d 744, 746 [235 P.2d 3].) Under this section one who is a guest in the automobile of another cannot recover against the driver for injuries or death unless he establishes that the injuries or death proximately resulted from the intoxication or wilful misconduct of the driver; but where one is a passenger, the driver is liable for ordinary negligence proximately causing the injuries or death. (*Follansbee* v. *Benzenberg,* 122 Cal.App.2d 466, 470 [265 P.2d 183].)'' (*Martinez* v. *Southern Pac. Co.,* 45 Cal.2d 244, 249-250 [288 P.2d 868].)

As for the new rings and repair work on the jeep by the parties, again Mr. Baker's part is not necessarily to be taken as compensation for the ride. Gratitude for other and different accommodations than the trip, that he had received from Mr. Novak, may have been his motive. He kept his own truck on the premises and lodged therein. He had been befriended when his wife was ill. He had been casually employed at times around the station. The jury would have to judge which motive actuated Mr. Baker, friendship or a bargain for the ride. Assuming such an implied finding by the jury for the purposes of appellant's contention on appeal, we find no error in submitting to the jury the question as one of fact. (*Martinez* v. *Southern Pac. Co.,* 45 Cal.2d 244 [288 P.2d 868].)

Appellant objects to the following instruction as containing prejudicial error in the use of the phrases ''*the* motive in giving the ride'' and ''*the* thing that actuated the giving

of the ride." It is appellant's contention that the use of the article "the" instead of the article "a" constituted the error; that there need be only "a" benefit for the ride to make the rider a passenger. The instruction follows:

"Now you will note that what the law refers to is that there must flow to the operator of the automobile a consideration for the giving of the ride. That doesn't have to be a payment of money; but it can be anything, any advantage of value to the operator of the automobile. So that it is not to be determined solely by whether the parties share the expenses. It is not to be determined solely by whether or not they were engaged in some undertaking together or making a trip together. But all those things are to be taken into consideration by the jury in determining as a matter of fact whether in giving to the party the ride in the vehicle the thing which actuated the giving of that ride was either some benefit which could flow to the operator of the car or by reason of the arrangement the parties had made he anticipated would flow to him. Now that might be any sort of an advantage, any sort of a thing that would persuade the giving of the ride, as long as it was something that operated or was expected to operate as a valuable advantage to the party operating the car. So it will be apparent to you that the mere fact that the parties may have been interested in the same thing or that they may have undertaken to share expenses, isn't necessarily the test. It is the question whether or not the motive in giving the ride was because of some advantage or something of value that either did flow to the operator of the car or that he anticipated would flow to him by reason of the agreements and undertakings of the parties."

What the court is speaking of here is the single concept of "compensation" for the ride as specified in section 403 of the Vehicle Code. As the instruction points out, this single concept is a fact to be judged by numerous probative facts among which are stated any advantage of value; whether or not a payment of money be made; whether or not expenses are shared; whether or not they were engaged in some undertaking together or making a trip together; all these matters were to be taken into consideration in determining that ultimate fact, to wit: "some benefit which would flow to the operator of the car," realized or expected. The instruction then explains the types of benefit or advantage that would measure up to the requirements of "compensation." We find nothing misleading in the uses of the definitive word "the"

instead of the indefinite article "a." The matter was before the trial court on consideration of a motion for new trial and we adopt as a part of this opinion the remarks of the trial judge. The Honorable C. M. Monroe there said on the point:

"Plaintiff argues that the jury might have construed this language as meaning that in order to establish the relationship of passenger the plaintiff would be compelled to prove that the sole and only reason actuating the giving of the ride was the expectation of some gain or advantage on the part of the owner of the vehicle. No case has been cited in which this distinction has been carefully spelled out. It might be argued on the contrary, that if any expectation of any advantage or gain entered into the transaction in any degree whatever such fact would constitute the recipient of the ride a passenger. In such event it might be reasoned that practically any time that a person took another into his automobile the latter became a passenger. I think it is fair to state that it is knowledge common to everybody that in all such transactions a number of reasons may be involved. Thus when a man proffers an accommodation to a friend he may entertain in the back of his mind some thought that the friend may in the future be of some value to him. So when we speak of 'motivating influence' we mean something which is actually a moving cause of the ride and not some minor consideration that may have possibly entered the mind of the owner of the automobile. I do not feel that this instruction could have been misunderstood or misinterpreted by the jury."

We find nothing in *McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909], in conflict, as to this point, with *Whitmore* v. *French,* 37 Cal.2d 744 [235 P.2d 3], or *Thompson* v. *Lacey,* 42 Cal.2d 443 [267 P.2d 1], or *Martinez* v. *Southern Pac. Co.,* 45 Cal.2d 244 [288 P.2d 868]. Where the context calls for the demonstrative and particular article "the" that word is used. When, however, the court is directing its attention variously to one of several motives influencing conduct it uses the indefinite article "a."

The court instructed the jury on the effect of the production of weaker evidence when it was in the power of the party to produce stronger evidence. ▇ The court gave no instruction under the rule stated in section 1963, subdivision 5 of the Code of Civil Procedure, viz: "That evidence wilfully suppressed would be adverse if produced." It is argued that the failure to give the latter instruction constituted prejudicial error, on the theory that the case was one for the application

of the doctrine of res ipsa loquitur and the defendant had not furnished evidence explaining the accident and therefore plaintiff was entitled to an instruction that defendant's negligence was responsible for the accident. On the question of negligence the doctrine of res ipsa loquitur concededly applied. As to the evidence offered by defendant to explain the accident it does not import the element of wilful suppression.

In *Dierman* v. *Providence Hospital,* 31 Cal.2d 290 [188 P.2d 12], plaintiff received his injuries from an explosion while in surgery and the doctor was using a hot iron to cauterize the wound. The Dierman case states the rule (quoting from the syllabus) :

"Where the doctrine of res ipsa loquitur is applicable and, in addition to the prima facie showing of negligence, it is admitted or appears without dispute that defendant has it in his power to produce substantial evidence material to the issue of negligence but fails to do so, it must be presumed that such evidence, if produced, would have been adverse to defendant, and under such circumstances the evidence is insufficient to support a verdict for defendant and plaintiff is entitled to a directed verdict."

In the instant case the defendant made an affirmative showing that while descending a grade and negotiating a curve at a lawful and proper speed, suddenly and without warning his steering apparatus failed him and he was unable to bring the jeep to a stop before it plummeted over the bank. Not until some nine or ten days later, when defendant was released from the hospital, did he have an opportunity to again see or inspect the jeep. When he got it back to his garage in San Clemente an inspection revealed that a broken bolt, a part of which was found buried in the front axle, was probably defective through crystallization. The other part of the bolt was never found. The portion recovered was placed by defendant in a tool box at a time when no action was pending or anticipated. When the trial was in prospect defendant hunted for and failed to find the part of the bolt. Eleven months had elapsed, the jeep had been repaired and was sold. The mechanic who removed the embedded part testified that in his opinion the bolt was crystallized and that the failure of the part was due thereto. Plaintiff himself testified that he had worked at the overhaul of the jeep shortly before the trip. We see in this no wilful suppression of evidence, and clearly the showing made takes the case out of the quoted rule of the Dierman case, *supra.* We agree with the trial court

that the jury would be justified in finding the explanation in this evidence, and that the failure to have preserved the part for future evidence was in no way blameworthy.

Judgment affirmed.

Griffin, Acting P. J., and Mussell, J., concurred.

A petition for a rehearing was denied October 10, 1956, and appellant's petition for a hearing by the Supreme Court was denied November 14, 1956. Traynor, J., was of the opinion that the petition should be granted.