SCHAUER, J.
Defendant appeals from a judgment for plaintiff, pursuant to jury verdict, in an action for personal injuries sustained when plaintiff was riding in an automobile operated by defendant. One count of the complaint alleges that plaintiff was a passenger for consideration, and one count alleges that defendant was guilty of wilful misconduct. De *361 fendant urges that the evidence is insufficient to prove either that plaintiff was a passenger or that defendant was guilty of wilful misconduct. We have concluded that the judgment should be upheld upon the theory that plaintiff was a passenger, but not upon the theory that defendant was guilty of wilful misconduct.
On the day of the accident (Sunday, February 7, 1954) plaintiff was defendant’s employe, but there is no contention that she was acting in the course and scope of her employment on that day.[1] Defendant was a real estate broker in Hermosa Beach. For four months before the accident plaintiff worked for defendant as receptionist and clerk.[2] Defendant’s hus *362 band, although he was licensed as a real estate broker, was not active in the business; defendant was the “boss.” Plaintiff testified that defendant “wanted me to learn all I could about the office so that when people came into the office I could have intelligent conversation with them regarding properties. . . . Even though I couldn’t quote prices, or I couldn’t sell.” Plaintiff answered affirmatively the question, “Mrs. Rawlings told you, didn’t she, that she thought that she’d . . . like to see you improve yourself, and would like to see you get a real estate license?” On one occasion defendant drove plaintiff to a property and showed plaintiff how to make a listing.
Plaintiff and defendant were members of the same church. Plaintiff was allowed time off, without loss of pay, to pursue church activities. On one occasion she attended a church lecture with the Rawlings, and on another occasion she attended a play with them. Plaintiff ordinarily worked five days a week, but on the following two occasions prior to the accident she worked on a normal day off: Defendant “told” plaintiff to attend a Saturday television program advertising real estate; after the program plaintiff and the Rawlings spent about an hour answering telephone inquiries resulting from the program. Plaintiff went to the television program because when defendant said, “You’ll go. You are to go with us,” plaintiff “felt that since Mrs. Rawlings was the boss that it was the right thing for me to do to go with her.” On a Sunday defendant asked plaintiff to go to the office so that defendant could “fix up her Social Security.” Plaintiff answered the telephone during this Sunday afternoon and at defendant’s request went with prospective customers and showed them an apartment. On these two occasions plaintiff did not receive and did not expect to receive any pay.
The accident occurred (as stated, on a Sunday) while the Rawlings and plaintiff were driving to Palmdale. According to plaintiff’s testimony the purpose of the trip was “seeing the property [of the Rawlings and of a Dr. Lindsey] and the activity in the real estate there.” Defendant had said to plaintiff, “I want you to go with us.”[3] Defendant planned *363 to return from Palmdale by way of Venice in order to obtain the signature of one Harris on a paper. Defendant testified that although she and her husband planned to look at the Lindsey property, the journey “was absolutely a pleasure trip.”
The circumstances of the collision were as follows: The weather was clear and sunny. Defendant was driving north on a two-lane highway which curved slightly toward her left. Defendant’s husband (who was fatally injured in the collision) was in the rear seat. Plaintiff was asleep in the front seat. Jean Novobilsky, who ivas driving ahead of defendant at about 50 to 55 miles an hour, saw defendant in his rear view mirror. As defendant came behind the Novobilsky car she turned to her left, out of her lane of traffic, and collided almost “head on” with a southbound car. There is no evidence of tire or skid marks attributable to defendant’s car on the highway after the collision.
Section 403 of the Vehicle Code provides in material part that “No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride . . . has any right of action for civil damages against the *364 driver of such vehicle ... on account of personal injury to . . . such guest during such ride, unless the plaintiff in any such action establishes that such injury . . . proximately resulted from the intoxication or wilful misconduct of such driver. ’ ’
As stated in McCann v. Hoffman (1937), 9 Cal.2d 279, 286 [70 P.2d 909], “where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given.” (Accord, Clifford v. Ruocco (1952), 39 Cal.2d 327, 328 [footnote] [246 P.2d 651].) Some cases say that where the driver receives a tangible benefit which is a motivating influence for furnishing the transportation, the rider is a passenger. (Whitmore v. French (1951), 37 Cal.2d 744, 746 [4] [235 P.2d 3]; Thompson v. Lacey (1954), 42 Cal.2d 443, 447 [6] [267 P.2d 1]; Martinez v. Southern Pac. Co. (1955), 45 Cal.2d 244, 250 [5] [288 P.2d 868]; Harris v. Harfmann (1952), 113 Cal.App.2d 615, 616-617 [248 P.2d 501]; Brandis v. Goldanski (1953), 117 Cal.App.2d 42, 48 [255 P.2d 36] [pointing out the difference in language between the Whitmore and Harris cases, on the one hand, and the Clifford case, on the other]; Kroiss v. Butler (1954), 129 Cal.App.2d 550, 555-556 [277 P.2d 873]; Ray v. Hanisch (1957), 147 Cal.App.2d 742, 748 [10] [306 P.2d 30].) The cases which use the phrase “a motivating influence” and those which use the phrase “the motivating influence” do not, because of this difference in phraseology, state different principles. The thought conveyed by both groups of cases is that the tangible benefit, not mere pleasure, kindness, or friendship alone, must be the principal inducement for the ride to constitute compensation. As pointed out in Baker v. Novak (1956), 144 Cal.App.2d 514, 520 [301 P.2d 257] (adopting remarks of the trial judge), “ ‘it is knowledge common to everybody that in all such transactions a number of reasons may be involved. Thus when a man proffers an accommodation to a friend he may entertain in the back of his mind some thought that the friend may in the future be of some value to him. So when we speak of ‘ ‘ motivating influence” we mean something which is actually a moving cause of the- ride and not some minor consideration that may have possibly entered the mind of the owner of the automobile.’ ” The District Court of Appeal in the Baker case says further, “We find nothing in McCann v. Hoffman, 9 Cal.2d 279 [70 P.2d 909], in conflict, as to this point, with Whitmore v. French, 37 Cal.2d 744 [235 P.2d 3], or Thompson *365 v. Lacey, 42 Cal.2d 443 [267 P.2d 1], or Martinez v. Southern Pac. Co., 45 Cal.2d 244 [288 P.2d 868], Where the context calls for the demonstrative and particular article ‘the’ that word is used. When, however, the court is directing its attention variously to one of several motives influencing conduct it uses the indefinite article ‘ a. ’ ”
Among the benefits which, it has been held, are or could be found to be compensation are the prospect of a business profit from an anticipated purchase by the rider from the driver (Halbert v. Berlinger (1954), 127 Cal.App.2d 6, 19 [12a, 12b, 14] [273 P.2d 274] [airplane; rule is the same as in automobile cases]; Whittemore v. Lockheed Aircraft Corp. (1942), 51 Cal.App.2d 605, 611 [125 P.2d 531] [airplane; see Whittemore v. Lockheed Aircraft Corp. (1944), 65 Cal.App.2d 737, 739-743 [1a, 1b] [151 P.2d 670], question of fact]; Piercy v. Zeiss (1935), 8 Cal.App.2d 595, 599 [2, 3] [47 P.2d 818]; Riley v. Berkeley Motors Inc. (1934), 1 Cal.App.2d 217, 220 [1] [36 P.2d 398] [prospective purchaser of car driving it under direction of salesman was passenger] ; Crawford v. Foster (1930), 110 Cal.App. 81, 84-86 [293 P. 841]), the creation of good will by the rendering of a service to a rider who has made a purchase (Follansbee v. Benzenberg (1954), 122 Cal.App.2d 466, 471 [7] [265 P.2d 183, 42 A.L.R.2d 832]; Whittemore v. Lockheed Aircraft Corp. (1942), supra, 51 Cal.App.2d 605, 611), the rider’s assisting the driver where the driver is transporting goods for the rider for compensation (Schramko v. Saulter (1956), 146 Cal.App.2d 549, 551-552 [2a-2b] [303 P.2d 1061]; Lerma v. Flores (1936), 16 Cal.App.2d 128, 129-130 [60 P.2d 546]), and the rendition or anticipated rendition of various types of service by the rider to the driver (Kruzie v. Sanders (1943), 23 Cal.2d 237, 241 [5] [143 P.2d 704]; Roberts v. Craig (1954), 124 Cal.App.2d 202, 211 [11] [268 P.2d 500, 43 A.L.R.2d 1146] ; Christiana v. Rattaro (1947), 81 Cal.App.2d 597, 598-599 [184 P.2d 682]; Fachadio v. Krovitz (1944), 62 Cal.App.2d 362, 363 [144 P.2d 646]; Weddle v. Loges (1942), 52 Cal.App.2d 115, 121-122 [125 P.2d 914]; Duclos v. Tashjian (1939), 32 Cal.App.2d 444, 450, 451 [90 P.2d 140] [plaintiff’s decedent accompanied defendant to repair defendant’s pump; the fact that decedent anticipated the benefit of employment “does not compensate and destroy by balancing an independent and separate compensation for the ride given by the rider to the driver”]; Haney v. Takakura (1934), 2 Cal.App.2d 1, 3-4 [1] [37 P.2d 170, 38 P.2d 160]).
*366 “[W]here the relationship between the parties is one of business and the transportation is supplied in the pursuit thereof for their mutual benefit, compensation has been given and the plaintiff is a passenger and not a guest.” (McCann v. Hoffman (1937), swpra, 9 Cal.2d 279, 286; Jensen v. Hansen (1936), 12 Cal.App.2d 678, 682 [1] [55 P.2d 1201]; Parrett v. Carothers (1936), 11 Cal.App.2d 222, 227-229 [4] [53 P.2d 1023]; Martinez v. Southern Pac. Co. (1955), supra, 45 Cal.2d 244, 251-252 [12]; Thompson v. Lacey (1954), supra, 42 Cal.2d 443, 446 [5].)
In Sumner v. Edmunds (1933), 130 Cal.App. 770, 778-779 [3] [21 P.2d 159], the plaintiff sought employment delivering newspapers for defendant company and was told by the manager of the automobile delivery routes that he would be given such employment if a vacancy should arise. Defendant Edmunds, who was employed to deliver papers by automobile, asked plaintiff to accompany him on his route so that plaintiff could familiarize himself with it. Plaintiff did so and was injured as the result of a collision caused by Edmunds’ negligence. Although the trial court found that plaintiff “was riding as a guest,” the District Court of Appeal held that plaintiff was a passenger. It appears that the appellate court was of the opinion that the crucial factor showing a “benefit” to defendants-appellants was that plaintiff “was traveling with appellant Edmunds at the instance and request of the appellants for the purpose of learning the paper route, so that in the future, should the occasion arise, he might be able to take the route over from Edmunds” (p. 779 of 130 Cal.App.). It is not necessary to go as far as the Sumner case to determine that there was a benefit to defendant in the present case.
Here it can fairly be said that the jury properly decided that defendant asked plaintiff to accompany defendant for the principal purpose of enabling plaintiff to familiarize herself with real estate activity in the Palmdale area, and particularly with the Rawlings and Lindsey properties, rather than for the principal purpose of mutual pleasure or companionship, and that plaintiff accepted the ride because of the employment relationship. (See Thompson v. Lacey (1954), supra, 42 Cal.2d 443, 446 [“It may be inferred that Thompson and Dreis went to the meeting with Kerns because they considered a suggestion by him that they do so as a command inasmuch as he was their supervisor”].) The advantage which would inure to defendant from having plaintiff acquire *367 information which would enable her to better perform the duties of her employment constituted a tangible benefit which amounted to the giving of compensation and made plaintiff a passenger to whom defendant was liable for ordinary negligence.
On the issue of wilful misconduct, the evidence is insufficient to support a determination favorable to plaintiff. The jury were instructed as follows on this issue:
“The words ‘wilful misconduct’ have a meaning in the law, additional to that which they have in common usage. If we were to use the words in their ordinary sense, they would mean simply the indulging in wrongful conduct by conscious choice. Such conduct might consist of doing something that ought not to be done or in failing to do something that ought to be done. But in order to be a basis for liability to a guest under our law, the misconduct must be something more than intentional and wrongful; it must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results.
“Wilful misconduct means something different from and more than negligence, however gross the negligence may be. A guest may not recover against her host unless the conduct of the host amounted to wilful misconduct, and that means intentional, wrongful conduct, done either with knowledge that serious injury to the guest probably will result, or with a wanton and reckless disregard of the possible results. . . .
“[I]f. you should find that defendant was negligent, and if you should find that she intentionally did something that was wrongful and which was a proximate cause of injury to plaintiff, still a case of willful misconduct is not established unless you further find that such conduct was done with knowledge that serious injury to the plaintiff probably would result, or with a wanton and reckless disregard of the possible results.”
The law stated in these instructions accords with the law as developed in the cases, among others, of Meek v. Fowler (1935), 3 Cal.2d 420, 425-426 [45 P.2d 194]; Parsons v. Fuller (1937), 8 Cal.2d 463, 468 [66 P.2d 430]; Weber v. Pinyan (1937), 9 Cal.2d 226, 230-235 [70 P.2d 183, 112 A.L.R. 407]; Porter v. Hofman (1938), 12 Cal.2d 445, 447-448 [1, 2] [85 P.2d 447]; Cope v. Davison (1947), 30 Cal.2d 193, 198-199 [180 P.2d 873, 171 A.L.R. 667]; Mercer-Fraser Co. v. Industrial Acc. Com. (1953), 40 Cal.2d 102, 116-118 *368 [8-14] [251 P.2d 955]; Hawaiian Pineapple Co. v. Industrial Acc. Com. (1953), 40 Cal.2d 656, 662-663 [2-10] [255 P.2d 431]; and Lynch v. Birdwell (1955), 44 Cal.2d 839, 847-848 [8] [285 P.2d 919], On the evidence defendant could not properly be found guilty of that wanton and reckless disregard of possible consequences, or that knowledge of probable injury, which characterizes wilful misconduct. Viewing the evidence most favorable to plaintiff it appears that defendant’s pulling into the southbound lane and into an oncoming car was a culpable error of judgment which amounted to negligence only.
Plaintiff relies upon the often quoted statement that ‘ ‘ one who, while driving an automobile, knowingly flirts with danger and, without necessity or emergency compelling him, ‘takes a chance’ on killing or injuring himself and others, who may be so unfortunate as to be riding with him, is guilty of wilful misconduct.”. (Parsons v. Fuller (1937), supra, 8 Cal.2d 463, 468-469; Emery v. Emery (1955), 45 Cal.2d 421, 426-427 [289 P.2d 218]; Chandler v. Quinlan (1938), 25 Cal.App.2d 646, 648 [78 P.2d 235]; Francesconi v. Belluomini (1938), 28 Cal.App.2d 701, 705 [83 P.2d 298]; Jones v. Harris (1951), 104 Cal.App.2d 347, 352 [231 P.2d 561]; Davis v. Oldendorph (1955), 130 Cal.App.2d 314, 318 [278 P.2d 956]; Harlow v. Van Dusen (1955), 137 Cal.App.2d 547, 550 [290 P.2d 911]; Fuller v. Chambers (1956), 142 Cal.App.2d 377, 380 [4] [298 P.2d 125]; see also Van Fleet v. Heyler (1942), 51 Cal.App.2d 719, 725 [2a] [125 P.2d 586]; Rawlins v. Lory (1941), 44 Cal.App.2d 20, 24 [5] [111 P.2d 973]; Berryman v. Quinlan (1938), 29 Cal.App.2d 608, 610 [85 P.2d 202].) This statement must not be understood as a definition of wilful misconduct. Rather, it is a characterization of one aspect of such misconduct. If it were taken as a complete definition, then merely venturing onto a crowded highway, or performing any other act involving a mere passive disregard of foreseeable consequences, without wilfulness or wantonness or knowledge that injury would probably result, could be found to be wilful misconduct. That such is not the law is manifest from the language of the instruction herein-above quoted and the cases from which it is derived.
Having concluded that it could and should have been determined that plaintiff was a passenger but that the evidence is insufficient to support a finding of wilful misconduct, we must determine whether the judgment can be affirmed on the assumption that the jury’s verdict was based on a determina *369 tion that plaintiff was a passenger and that defendant was negligent, rather than on a finding, unsupported by the evidence, that defendant was guilty of wilful misconduct. The conclusion that plaintiff was a passenger rather than a guest flows from facts as to which there is no substantial dispute: That plaintiff’s employment involved her learning about real estate, that defendant told plaintiff that “I want you to go with us” on the trip which resulted in her injury and that the purpose of that trip was the observation of real estate and real estate activity. It is true that defendant testified that the journey was “absolutely a pleasure trip,” but she did not, and apparently could not, dispute the significant facts. Under these circumstances the error in submitting to the jury the issue of wilful misconduct cannot be prejudicial. On such a record it may be assumed that the jury understood the instructions and correctly applied them to the evidence (Oettinger v. Stewart (1944), 24 Cal.2d 133, 140 [4c] [148 P.2d 19, 156 A.L.R. 1221]; Nunneley v. Edgar Hotel (1950), 36 Cal.2d 493, 500 [5] [225 P.2d 497]), and that the verdict for plaintiff was based on a determination that she was a passenger, not upon a determination that defendant was guilty of wilful misconduct. (Cf. Huebotter v. Follett (1946), 27 Cal.2d 765, 770-771 [3, 4] [167 P.2d 193]; Baker v. Novak (1956), supra, 144 Cal.App.2d 514, 515 [1]; Winn v. Ferguson (1955), 132 Cal.App.2d 539, 542 [282 P.2d 515].) Since no miscarriage of justice (Cal. Const., art. VI, § 4½) appears, the verdict must be upheld.
For the reasons above stated the judgment is affirmed.
Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

The complaint originally contained a count which alleged that at the time of her injury plaintiff was riding in the automobile in the scope and course of plaintiff’s employment by defendant and that defendant was wilfully uninsured for workmen’s compensation. Plaintiff dismissed this count.
Defendant did not allege and prove, and does not contend, that plaintiff’s remedy is under the Workmen’s Compensation Act rather than a tort action. Defendant could not now make such a contention. “An employer who contends that he is one of a class of persons protected from an action at law by the Workmen’s Compensation Act must plead and prove the conditions necessary to bring himself within the statute. The employee is pursuing a common law remedy which existed before the enactment of the statute and which continues to exist in cases not covered by the statute. It is incumbent upon the employer to prove that the Workmen’s Compensation Act is a bar to the employee’s ordinary remedy.’’ (Popejoy v. Hannon (1951), 37 Cal.2d 159, 173-174 [24] [231 P.2d 484].)

Plaintiff described her duties in the following manner: “I was to answer the telephone, and if there were no sales people in the office and some one inquired about property I was to find out what kind of property they wanted, and if I could, where they wanted it, and get their names, and get their telephone number, and have one of the sales people call them when they came back into the office. And then, twice a week we received listings from the multiple board that all the realtors belonged to . . . And it was my work to go through these listings, and to make tickets for books for the sales people, and then, any property that had been sold, or any property that had been canceled, or if there were changes made on the listings . . ., I was to go through the tickets that I had made for the sales people and put all this information on there for them. . . . And taking care of the ads in the paper, keeping them in a book, and as they were canceled to take them out of the book, and keeping a record of telephone calls that we had on each ad that was in the paper each day, and just general office work . . .
“I couldn’t quote prices ... I couldn’t quote down payments, I couldn’t quote monthly payments. I could quote if we had two-bedroom houses in Hermosa, or if we had three-bedroom houses in Manhattan, or if we had property for sale in Redondo. It was my job to find out what size house people wanted . . . and about what they wanted to pay, and the location that they wanted. But, I couldn’t go into any details or discussions about prices or sizes or things like that, descriptions, so to speak, of the legal description of the property, because I didn’t have the license to do that.’’

Plaintiff ⅛ testimony concerning the purpose of the trip, in detail, is as follows:
“There had been much talk in the office about real estate activity in Palmdale. . . . There was much demand for homes, and there had been much discussion in the office concerning this activity in Palmdale of real estate, and when this friend brought me the little newspaper from Northrop on that week before the accident, because it had so much information in it about stores and houses, and a map of the Palmdale *363 area, I took it into the office, and everybody in the office looked at it, and read it, and studied it, and found out all they could about it. . . .
“Dr. Lindsey came in while the book was there. . . . And he was talking about the property of his, and he took the map and he marked his property . . . and he said to Mrs. Rawlings—she’d been talking about going up there to see her lots, they owned some lots somewhere there in the desert not too far, I think, from Palmdale. And he said, ‘When you go up there to look at your lots I want you to look at my property, too.’ . . .
“Mrs. Rawlings talked about going to see their lots, and about going to Palmdale to see the real estate activity, and to find out what she could about it, because she could have contacted her realtor and sold the property there through them if somebody came into the office for that. . . .
“And she said . . ., ‘We are going up there, and I want you to go with us.’ ”
“Q. . . .At any time before you started out on that trip did either Mr. or Mrs. Rawlings tell you that you had any duties to perform on that trip?
“A. Nothing exeept to see the property.
“Q. Well, they didn’t tell you that you had to see the property, did they? . . . [A]t no time before you started out on that trip did either one of them tell you you had something to do on that trip?
“A. We were going to see the property, and that I was to see the property. ...
“Q. But they didn’t tell you that you were to come along for the purpose of performing some duty on or in connection with that trip did they? ...
“A. No, but the thing is, we went to see the real estate activity in the Palmdale area, and that was when—what we talked about going for, and to see the Rawlings’ lots.’’