[Civ. No. 8542. Third Dist. Apr. 26, 1955.]

KATHLEEN WINN, Respondent, v. JESSIE YVONNE FERGUSON et al., Appellants.

McDougall & Fitzwilliam, Fitzwilliam & Memering and Leo M. Fitzwilliam for Appellants.

J. Adrian Palmquist, George W. Hauer and Francis T. Cornish for Respondent.

FINLEY, J. pro tem.*—This appeal is by defendants from a judgment entered upon the verdict of a jury awarding plaintiff $15,000 damages for personal injuries sustained by plaintiff in an intersection collision while she was riding in an automobile driven by appellant Jessie Ferguson with the knowledge and consent of its owner, G. R. Ferguson.

There are two points to be passed upon herein. The first: Was respondent a passenger or a guest in the automobile? The second: If respondent was a passenger was appellant Jessie Ferguson, the driver, guilty of actionable negligence, or if respondent was a guest was said driver guilty of wilful misconduct?

The collision occurred on a Saturday morning about 9:40 a. m. at the intersection of Fulton Avenue and El Camino Avenue on the outskirts of the city of Sacramento. The automobile in question was proceeding westerly on El Camino Avenue, approaching Fulton Avenue. Appellant Jessie Ferguson was driving and respondent was sitting alongside her in the front seat. Also in the front seat was the appellants' 21-month-old child, and in the rear seat were respondent's

*Assigned by Chairman of Judicial Council.

two sons aged 10 years and 8 years, and also appellants' son aged about 4 years. Appellant driver had just shifted into high gear and was traveling between 10 to 25 miles per hour when her 21-month-old son started climbing over the back of the front seat. Appellant's attention was attracted to this episode and while her attention was thus diverted she drove into the intersection without observing the stop sign. There her automobile was struck broadside on its right by another vehicle which had the right of way. Appellants' car was completely demolished and respondent rendered unconscious for approximately a week. The seriousness of respondent's injuries is not disputed. Neither is it contended that the amount of damages awarded is excessive. However, appellants maintain that respondent is barred from recovery by section 403 of the Vehicle Code, which provides:

"No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, . . . has any right of action for civil damages against the driver of such vehicle . . . on account of personal injury to . . . such guest during such ride, unless the plaintiff in any such action establishes that such injury . . . proximately resulted from the intoxication or wilful misconduct of said driver."

We are in accord with appellants' theory that they are liable for respondent's injuries only if respondent gave "compensation" for the ride. ■ There is no evidence from which it could sensibly be found that appellant Jessie Ferguson was guilty of wilful misconduct unless we are to pervert the plain meaning of the statute. It is one thing to leave questions of fact upon which reasonable minds might differ to the decision of a jury, but quite another where there is only one possible reasonable answer. Certainly the term "reasonable minds" would here lose all significance as a practical, ordinary and common sense measure of conduct were we to so far stray from reality as to hold that a mother's protective glance at her young child could be considered as wilful misconduct even at the time and place where the hazard was considerable. Courts have sometimes held that law is reason, which we take to mean reason according to the standards of ordinary people in everyday life. Although appellant turned her head to look at the child and disregarded or failed to see the stop sign, there is no evidence that her inattention to her driving was more than momentary or that it was done or continued for any appreciable distance over the warning or protest of

respondent as in the case of *Frank* v. *Myers*, 16 Cal.App.2d 16 [60 P.2d 144], upon which respondent relies. Appellant driver of the car did testify that respondent screamed "Stop" but this was apparently as they were about to be struck, as will be indicated by the following question and appellant's answer: "Q. The whole thing happened very fast? A. Yes. She screamed and then we got it." Neither were appellant's actions coupled with excessive speed and reckless driving as in *Allen* v. *Robinson*, 85 Cal.App.2d 617 [193 P.2d 498]. It is admitted that prior to her momentary inattention to her driving appellant was proceeding slowly and in a cautious and careful manner. ██ A finding of wilful misconduct cannot be predicated upon mere inadvertence or even gross negligence. ██ It was, therefore, error to instruct the jury that respondent was entitled to recover if they found that appellant was guilty of wilful misconduct. It is true that the jury may not have so found but may have based the verdict on a finding that respondent had given "compensation" for the ride and could, therefore, recover upon a finding that appellant was negligent. "But we have no means of determining which theory prompted the jury to return its verdict" and the judgment must, therefore, be reversed. (*Wright* v. *Sniffin*, 80 Cal.App.2d 358, 365 [181 P.2d 675].)

A further determination to be made is whether upon such reversal judgment should be directed in favor of appellants pursuant to section 629 of the Code of Civil Procedure. This depends upon whether from the whole of the evidence a verdict should have been directed in favor of appellants, as requested, or whether their motion for judgment notwithstanding the verdict should have been granted. Both such motions were made and denied. As already noted, the verdict in favor of respondent cannot be sustained on the count of the complaint based on the alleged wilful misconduct of the appellant. However, there was sufficient evidence to take the case to the jury on the issue of appellant's negligence if the facts would permit a finding that respondent "gave compensation" for the ride and that her status was that of a "passenger," and not a "guest." Therefore, the question is whether there was any evidence from which it could reasonably be deduced that respondent had given "compensation" for the ride within the meaning of section 403 of the Vehicle Code. ██ Ordinarily, "It is for the trier of fact to determine whether the rider conferred a benefit or whether the ride was merely of a social nature." (*Follansbee* v. *Benzen-*

*berg,* 122 Cal.App.2d 466, 471 [265 P.2d 183].) That is, it is for the jury to resolve any conflict in the evidence, or any reasonable inferences which may be drawn therefrom. (*Kruzie* v. *Sanders,* 23 Cal.2d 237, 241-243 [143 P.2d 704]; *Roberts* v. *Craig,* 124 Cal.App.2d 202, 211 [268 P.2d 500]; *Malloy* v. *Fong,* 37 Cal.2d 356, 376-378 [232 P.2d 241].)

However, if the admitted facts can give rise to but one reasonable conclusion, the question as to whether or not ''compensation'' was given for the ride becomes one of law. (*Haney* v. *Takakura,* 2 Cal.App.2d 1, 7-9 [37 P.2d 170, 38 P.2d 160]; *Druzanich* v. *Criley,* 19 Cal.2d 439, 442-444 [122 P.2d 53]; *Henry* v. *Henson* (Tex.Civ.App.), 174 S.W.2d 270, 275; see also 10 A.L.R.2d 1351.) After review of the entire record, we are satisfied that the latter rule obtains herein. There is no conflict in the following evidence.

Appellant Jessie Ferguson and respondent are very close friends. Their husbands are cousins and grew up together in Roseville where appellants now live. Respondent's home is in the Town and Country area outside of the city of Sacramento. The two families visited each other frequently and appellant greatly admired and was impressed with respondent's way of life which she attributed in a large measure to her religious devotion. Due to the interest appellant expressed, respondent had taken her to at least two meetings of the Seventh Day Adventists in Roseville. However, appellant had never been to the church in Sacramento which respondent attended regularly. On the day before the accident appellant told respondent she would like to accompany her to the religious services to which respondent was going in Sacramento on the following day. It was arranged that they would meet at respondent's home. Pursuant to this plan, appellant and her two children arrived at respondent's home shortly after nine o'clock on the morning of the accident. They immediately prepared to leave for Sacramento for the church services. Respondent intended to use her own automobile, but appellant suggested that it would be more convenient to use hers since it was in the driveway and would have to be moved before respondent could back out her car. Therefore, simply for convenience the parties used appellant's automobile instead of respondent's. Appellant did not induce respondent to attend church in order to accommodate her or introduce her to members of the congregation. Respondent planned to attend church, as was her weekly custom, regardless of whether or not appellant accompanied her. Respond-

ent did not discommode herself for appellant's benefit. Disregarding the accident, respondent would not have conferred any benefit upon appellant nor suffered any detriment by riding in appellant's automobile instead of her own. In fact, respondent would have been spared the expense and trouble of furnishing her own transportation. It was she who was the recipient of appellant's extended social courtesy of providing the ride. Respondent did not give "compensation" therefor by permitting appellant to accompany her to the regligious services. Respondent undoubtedly entertained the hope that by so doing appellant would be led to join her church and share the spiritual comforts which she derived therefrom. However, such personal satisfaction realized by respondent would not be the "giving of compensation" for the ride to appellant. Appellant's gaining peace of mind, happiness, or other intangible benefits by her possible acceptance of respondent's faith was not dependent upon respondent's riding in appellant's car, rather than her own. The same is true as to the consideration given by appellant to embracing the tenets of the Seventh Day Adventist Church in order to be able to later avail herself of its educational and training facilities for her then preschool age children. Any such future benefits to appellant and her family were not to be acquired by her on condition that she drive respondent to the church services on the morning of the accident. To the contrary, respondent was prepared to drive her own automobile and did not do so merely because it was decided it would be easier to take appellant's. Respondent's acquiescence in appellant's suggestion to use her automobile did not amount to giving "compensation" for the ride. Respondent's act of permitting appellant to accompany her to church was not conditioned upon appellant's conveying her and her children thereto. Respondent was not dependent upon appellant for transportation and had no reason to offer or give appellant any compensation to take her to church. Respondent was willing and able to drive the party in her own vehicle. That she did not do so was merely for mutual convenience. The purposes of the trip would have been as readily accomplished if respondent's automobile had been used. Appellant did not drive her automobile in order to compensate respondent for allowing her to accompany her to church no matter what benefits she may have felt might be gained by becoming a member thereof. Appellant's motives in attending the services in no way influenced the perchance choice of vehicles.

(See *Born* v. *Matzner's Estate,* 15 Neb. 169 [65 N.W.2d 593, 598].) Respondent's concurrence in appellant's request to accompany her was an incident of their social and friendly relations. Whose automobile was used for the trip was of no significance. Under such circumstances, there can be no support in law or reason for finding that respondent gave "compensation" for the ride. It was, therefore, erroneous to permit the jury to so find.

The judgment will therefore be reversed with directions to enter judgment for the appellants notwithstanding the verdict.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied May 13, 1955, and respondent's petition for a hearing by the Supreme Court was denied June 23, 1955. Carter, J., was of the opinion that the petition should be granted.