[Civ. No. 22148.   Second Dist., Div. Three.   Nov. 20, 1957.]

SARAH SHAPIRO, Appellant, v. ZEENA BOOKSPAN
et al., Respondents.

354

Louis E. Edelberg and Berry D. Locke for Appellant.

Spray, Gould & Bowers for Respondents.

SHINN, P. J.—By amended complaint, plaintiff Sarah Shapiro sought to recover $150,000 damages from her daughter, Zeena Bookspan, and her son-in-law, Saul Bookspan, for personal injuries allegedly sustained as the result of a collision which occurred while plaintiff was riding in an automobile owned by the defendants and which was being driven by Zeena.

The amended complaint stated two causes of action. In the first count it was alleged that plaintiff was a guest in Zeena's automobile and that her injuries were proximately caused by her daughter's wilful misconduct in driving at a reckless

rate of speed and in proceeding through a main intersection without stopping, although the intersection was controlled by red flashing danger signals which required Zeena to stop. In the second count it was alleged that plaintiff was a passenger in Zeena's automobile in that she had acted as a baby sitter for Zeena upon Zeena's express promise that she would drive plaintiff back to her own home, and that plaintiff's injuries were proximately caused by Zeena's negligence. The answer admitted that a collision had occurred and that plaintiff had suffered injury, but denied the other material allegations of the amended complaint. Trial was to a jury which returned a verdict for the defendants. Plaintiff appeals from the judgment entered upon the verdict of the jury.

The following facts were developed in the evidence. The accident occurred shortly after midnight on April 18, 1954, while Zeena was driving her mother home after spending the evening at the Bookspan residence. On the preceding day, Zeena telephoned plaintiff, who was a 68-year-old widow, and asked plaintiff to come to her house in West Los Angeles and baby sit for her 7-year-old son, Mark, while she and her husband went out for the evening to celebrate the confirmation of a new position Mr. Bookspan had obtained in Toledo, Ohio. Plaintiff agreed to come, but she told Zeena that she was very tired and would do so only on condition that Zeena would drive her home so that she could sleep in her own bed. Zeena consented.

That afternoon Zeena called for her mother and took her to the Bookspan house, where a party in celebration of Mark's seventh birthday was in progress. After the party Zeena took her mother grocery shopping and ran some errands of her own; she occasionally drove her mother to the market because plaintiff did not have a car. After passing by plaintiff's house to drop off the groceries, they returned to Zeena's home. Plaintiff helped Zeena prepare dinner. The Bookspans left around 8 p. m. and returned sometime after 11; plaintiff stayed with her grandson.

Plaintiff testified that prior to April 17th she had gone to her daughter's house to baby sit on an average of once a month. Zeena stated that her mother sometimes took the bus to get to her house but that she always drove plaintiff to her own home to spend the night, except on one occasion when a heavy rain had caused the streets to flood. Plaintiff stated that she went to her daughter's home on April 17th only for the purpose of baby sitting and that she did so solely

in order to save Zeena the expense of hiring a professional baby sitter. Zeena was her only daughter; being a widow, she lived alone. On cross-examination she admitted that she enjoyed visiting her daughter and grandson.

After the Bookspans returned, Zeena started to drive plaintiff to her residence, which was located on Cattaraugus Street in Culver City, a few blocks south of Venice Boulevard. Plaintiff stated that Zeena was driving south on Cattaraugus at an excessive rate of speed and that she told her daughter several times to slow down. The accident occurred at the intersection of Venice Boulevard and Cattaraugus. At the location of the accident, Venice is divided by an island, some 70 feet wide, which was formerly used as a streetcar right-of-way. There are four westbound lanes on Venice directly north of the island and four eastbound lanes directly south. The island was covered with weeds which, on April 18th, were three feet high and made it difficult for drivers going south on Cattaraugus to see the eastbound traffic on the south side of the island. There was a stop sign at the northern entrance to Venice Boulevard and entrance into the southern half of Venice was controlled by a system of flashing red lights. Traffic proceeding east on Venice was governed by a system of flashing yellow lights.

The testimony as to the events which immediately preceded the collision was conflicting. Plaintiff testified that Zeena did not come to a full stop before entering Venice, but drove across the northern half of the boulevard and continued past the island into the eastbound lanes without stopping for the flashing red lights. The car was struck broadside by an eastbound automobile which was being driven by Alvin Blue. Blue testified that he first saw Zeena's car when he was about 20 or 25 feet from the intersection as it suddenly sped across his path; the cars collided before he could apply his brakes. Charlie Rickels, a pedestrian who was standing on the southwest corner of Venice and Cattaraugus, testified that he saw Zeena's car stop before crossing into the eastbound lanes on Venice and that Blue was approaching the intersection at a high rate of speed. Zeena stated that she made a complete stop at the entrance to the intersection, then crossed the westbound lanes of Venice Boulevard and proceeded past the island without coming to a full stop before entering the south half of Venice. The weeds obstructed her vision of traffic going east on Venice. As she started across the southern half of the boulevard she saw the lights of Blue's car and ac-

celerated, so as to cross the street ahead of it. Plaintiff was severely injured in the accident and was confined to the hospital for 101 days.

Plaintiff urges two grounds for reversal of the judgment: (1) The court erred in refusing to instruct the jury that plaintiff was a passenger as a matter of law and that Zeena owed to her mother the duty of exercising ordinary care in the operation of the automobile; (2) The jury was improperly reinstructed as to the issues involved in the case. It is not contended that the evidence was insufficient to support the verdict.

The first contention to be considered is that the court erred in refusing to give two instructions proposed by plaintiff which would have told the jury that plaintiff was a passenger in her daughter's car and that at the time of the collision Zeena owed her mother the duty to exercise ordinary care. Plaintiff argues that under the undisputed evidence the ride home was in payment for services she rendered to Zeena as a baby sitter and that her services constituted compensation for the ride; it is her position that as a matter of law the guest statute was inapplicable. Zeena argues, on the other hand, that the evidence was susceptible of two opposing and equally reasonable interpretations or inferences and that the question of plaintiff's status was properly left to the jury. We agree. ▆▆ In our opinion, the court did not err in refusing to instruct the jury that plaintiff was a passenger as a matter of law.

▆▆ While a driver is liable to his passenger for injury caused by the driver's ordinary negligence, the guest statute limits the liability of a driver for injury to his guest to cases where the injury was the result of the former's intoxication or wilful misconduct. (Veh. Code, § 403.) ▆▆ A passenger is one who gives compensation for a ride. (*Follansbee* v. *Benzenberg,* 122 Cal.App.2d 466, 471 [265 P.2d 183, 42 A.L.R. 2d 832].) ▆▆ Where the driver has received a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, compensation may be said to have been given, with the result that the rider is a passenger and the driver is liable to him for simple negligence. (*Martinez* v. *Southern Pac. Co.,* 45 Cal.2d 244 [288 P.2d 868].) ▆▆ But whether the rider conferred a benefit or whether the ride was merely of a social nature is ordinarily a question of fact for the jury. (*Gosselin* v. *Hawkins,* 95 Cal. App.2d 857, 861 [214 P.2d 110]; *Follansbee* v. *Benzenberg,*

*supra*, 122 Cal.App.2d 466, 471, and cases cited.) ▆ It is only where the admitted facts can give rise to but one reasonable conclusion that the question of the rider's status becomes one of law. (*Winn* v. *Ferguson*, 132 Cal.App.2d 539, 543 [282 P.2d 515], and cases cited.)

Since plaintiff was suing her daughter for large damages their testimony invited close scrutiny. Their credibility was of the utmost importance. It was a fair inference that the daughter was not at all averse to having a judgment rendered against her. Her testimony as to the special arrangements that she was to drive her mother home was elicited only by means of bold leading questions on redirect examination. She testified that she did not bring her car to a full stop as she entered the south half of Venice. On cross-examination she readily admitted that she had made a report to the police in which she stated that she had brought her car to a stop at that point. She also admitted that she had on several occasions made the same statement to the attorney who was representing her at the trial. In considering the weight to be given to the testimony of the mother and daughter the jury was required to take into consideration their interest in the outcome of the case and any statements made by either of them in conflict with their testimony. Essential facts were whether the daughter was guilty of negligence and whether there was a special agreement that the mother would take care of the child only if she was given a ride home. In our opinion the testimony mentioned was not such as to require the jury to give it full faith and credit. The case differs from those in which the facts are admitted or established beyond question.

Even if the jury believed that Zeena had made a specific promise to drive her mother home it was not a necessary inference from that fact that the mother was a passenger. The evidence would have warranted the jury in concluding that Mrs. Shapiro was a guest in her daughter's automobile. There was no agreement for compensation passing between the mother and daughter. The mother was acting as baby sitter for the daughter's child as a matter of convenience and accommodation, just as the daughter occasionally drove the mother about in order that she might go shopping. A reasonable view of the situation would be that the mother's caring for the child was gratuitous in every respect, and motivated by the love and affection she had for her daughter and the pleasure she derived from the child's company. Such family amenities are rendered without expectation of compensation

and a jury could well have concluded that neither mother nor daughter expected, nor would have been willing to receive, any compensation from the other. It certainly was not a necessary conclusion that the mother was taking care of the child because of a promise of a ride home in the daughter's car or that the ride was any form of compensation. That could have been deemed a mere matter of accommodation, prompted by the same motives that induced the mother to look after the child. The payment of compensation which furnishes the test between the status of guest and passenger is something more than a mere exchange of favors, and this would be especially true of favors exchanged between members of a family, when neither of the persons involved would entertain a thought of compensation. We are concerned only with the contention that plaintiff's status as a passenger was established as a matter of law. Certainly it cannot be said as a matter of law, and in all cases, that if a mother or daughter visits the home of the other to render assistance in the domestic duties that pertain to the operation of a household the one who furnishes the assistance becomes a paying passenger if it is a part of the arrangement that she will be driven home in the other's car. The circumstances in which one person is riding in the car of another are infinite. When the status is established beyond reasonable dispute by the evidence and the reasonable inferences the question is one of law. Otherwise it becomes a question of fact. (*Duff* v. *Schaefer Ambulance Service, Inc.*, 132 Cal.App.2d 655 [283 P.2d 91].) We take it to be a common practice to provide transportation for paid baby sitters. We would call attention to the fact that our conclusions in the present case are applicable to the precise factual situation we have described, and should not be considered as applicable to baby sitters in general. Upon the evidence we have stated it did not appear as a matter of law that plaintiff was her daughter's passenger, and it was not error to refuse the requested instructions.

After the court had ruled that plaintiff's status as a guest or a passenger was a question of fact for the jury, her counsel submitted an instruction which required the jury to determine whether plaintiff was a passenger or a guest, and fully stated the rules pertaining to liability, which would apply when it was found that she occupied one status or the other. The instruction was a proper one, and together with the other instructions given by the court, it was sufficient as a state-

ment of the applicable law. Defendants make the point that in requesting the instruction of which she now complains, plaintiff waived her right to assign error in the refusal of the instructions she had proposed. Plaintiff contends that she did not thereby waive her right to complain of those instructions for the reason that when a party is unable to convince the court to instruct the jury according to his conception of the law, the fact that he requests instructions in accordance with the court's ruling does not preclude him from assigning error. However, in view of the conclusion we have reached, it is unnecessary to decide this question.

The other contention to be considered is that the court answered a question by one of the jurors by a statement which improperly limited the issues.

Shortly after the case was submitted, the jurors sent word that they wished to have reread to them the court's instructions on wilful misconduct. The court reread the instructions which counsel asked to have read. These included instructions on the passenger and the guest status and the law pertaining to the same, and instructions on wilful misconduct, which were the ones the jurors desired to have reread. Thereupon the following occurred: "Juror No. 1: I want to ask you something, your Honor. Can the Plaintiff collect if the Defendant is found guilty of negligence? If she's found guilty of negligence, can she get anything for her pains or aches? The Court: Well, I don't think I can answer that question. I think you're going to have to decide that. Don't you understand the issues of the case with respect to the passenger and the guest? Juror No. 1: That's right. Juror No. 9: Your Honor, we're to decide whether she was guilty of wilful negligence? Is that the thing? The Court: What was the question? Juror No. 9: Are we to decide whether the Defendant was guilty of wilful negligence? Is that what the case is all about, if it was wilful negligence? The Court: Wilful misconduct. I'd like to be able to talk to you ladies and gentlemen of the jury, but the law does not permit it unless I had elected to comment to the jury, which I did not. Is that all right with counsel now? Mr. Breslin: I think so, your Honor. The Court: All right."

The jury then retired for further deliberation and returned within an hour with its verdict.

It is earnestly argued in plaintiff's briefs that the court's answer to the question of Juror Number 9 was misleading and prejudicial, that it conflicted with instructions previously

given by the court and that it had the effect of withdrawing from the jury the issue whether plaintiff was a passenger or a guest. We think not.

The language of the court, when considered in its context, cannot be deemed to have had the effect of telling the jury that the only issue in the case was whether Zeena was guilty of wilful misconduct. The court asked the jurors whether they understood the issues as framed by the instructions that were reread and received an affirmative reply. It appears that the language complained of was pertinent to the request for a rereading of the instructions on wilful misconduct. In answering the juror's question the court was not required to repeat the instructions on other issues that had just been read. We cannot believe that the jurors were misled into thinking that they were to disregard the detailed instructions which related specifically to the passenger status and liability for simple negligence. Further, when the court asked "Is that all right with counsel now?" plaintiff's attorney did not request the court to correct what is now urged to have been a prejudicially erroneous statement. We may assume that it was not considered erroneous at the time. There is no substance to the assignment of error.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.