[Civ. No. 31786.   Second Dist., Div. Three.   Oct. 30, 1968.]

CHARLES FULLER, a Minor, etc., Plaintiff and Respondent,
v. RONALD GREENUP, Defendant and Appellant.

Wyman, Finell & Rothman and Thomas R. Breslin for
Defendant and Appellant.

Richard M. Hawkins for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*

## Statement of the Case

On June 21, 1963, plaintiff sustained personal injuries when a 1963 Volkswagen motor vehicle overturned while it was being operated on Highway 16, near the City of Vanderhoof, in the Province of British Columbia, Canada. Plaintiff and defendant, both minors, were traveling from Alaska, en route to California at the time. Defendant was operating plaintiff's vehicle. Plaintiff was an occupant of his own vehicle when the accident occurred. No other vehicles were involved; the weather and visibility were good at the time of the accident.

The cause was tried before a jury and at the conclusion of the trial the jury brought in its verdict in favor of the plaintiff and against the defendant and assessed damages in the sum of $37,500. Judgment was entered on the verdict. Defendant's motion for a new trial was denied. The appeal is from the judgment.

## Summary of the Pleadings

Plaintiff set forth two counts in his complaint. In the first count he alleged in substance that he was the owner of the 1963 Volkswagen automobile; on June 21, 1963, at a point approximately 40 miles from the City of Vanderhoof, Province of British Columbia, defendant, Ronald Greenup, operated the 1963 Volkswagen in such a negligent manner as to cause it to run off the highway; that such conduct proximately caused injuries to the plaintiff; plaintiff was then and there riding as a passenger in the vehicle. In the second count he realleged the foregoing, and in addition alleged that the defendant's conduct in the operation of the vehicle was such as to constitute willful misconduct. The answer denied the foregoing allegations of the complaint and pleaded the affirmative defenses of (1) contributory negligence, (2) assumption of risk, and (3) that plaintiff was barred from recovery by reason of the provisions of the British Columbia Motor Vehicle Act, section 71, in that plaintiff was not a passenger being transported for hire or gain.

## Summary of Proceedings Held in the Determination of the Applicable Substantive Law

At the beginning of the trial, outside the presence of the jury, the court received testimony from the plaintiff and the

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

defendant. Based upon the testimony the court ruled that at the time the plaintiff and defendant embarked upon the trip and at the time of the accident they were both domiciliaries of the State of Alaska. The evidence was sufficient to sustain this finding. The court also ruled that the substantive law of British Columbia was the law applicable in the determination of the issues in the litigation.

## Summary of the Evidence

In view of the issues raised on this appeal, no summary is here made of the medical testimony or the evidence relating to the nature and extent of plaintiff's injuries.

The defendant, Ronald Greenup, testified in substance that at the time of trial he lived, and for approximately five years next preceding the date of trial (October 6, 1966) he had lived in Ketchikan, Alaska; he became acquainted with the plaintiff, Charles Fuller, when both were living together during the nine-month period preceding the trip to California for the purpose of seeing their folks; he knew it would cost him $98 to fly and he would have flown down had he not made arrangements to come with Fuller; he had made arrangements with Fuller to share equally with him the cost of gas, oil and food; he could possibly save the biggest part of the $98 plane fare by going with Fuller; he had no agreement to return to Alaska with Fuller as he intended to fly back; there was a further agreement between them that they would share the chore of driving, each relieving the other when he became tired; they had not decided whether or not they were going to stay overnight anywhere on the trip, or would push on through.

Greenup testified further that when they left Ketchikan they rode the ferry from about 11 p.m. to 7 a.m., during which time both of them slept; when they started driving the next day, the situation was not one where they were dead tired, due to lack of sleep the night before; after they got off the ferry, Fuller drove for approximately 200 miles; during that distance there were places where the road was under repair; there were signs in most of the places where they were working on the road; some of these areas were posted with the sign "Bump."; the roadway varied in width; it was wider in areas away from the coastline and narrower in areas close to the coastline; it was a two-lane highway, one lane in each direction of travel; he took over the driving at a point about 100 miles from the place of the accident; he encountered

depessions in the roadway in the course of his driving; some of them were deeper than others; he could not tell how deep the depression was until he got right on it; at some of these locations the roadway was graveled about the area of the depression; when he came upon these depressions he would slow the speed of the vehicle; when not encountering depressions he drove 55 to 60 miles per hour, depending on the type of road; he did not recall whether all of the depressions were preceded by posted signs, if they were bad enough they had a sign; some of them had a sign which read ''Bump,'' and some of them had a sign which read ''Construction . . . so many yards, or maybe a mile ahead.''

Greenup testified that as he approached the place where the accident occurred, he was watching the road ahead; the windshield of the vehicle was clean; the only obstruction to his view was the character of the roadway, which curved to his right; he was operating the vehicle at a speed of 55 to 60 miles per hour; he saw a sign on the right hand side of the road about 50 yards ahead which read ''Bump''; he did not recall seeing a ''Slow'' sign; after seeing the ''Bump'' sign he started to slow down by taking his foot off of the accelerator; the speed of the vehicle decreased to about 40 miles per hour; he did not recall how far it was from the ''Bump'' sign to the bump itself; after he saw the ''Bump'' sign, his car continued in the curve; he was looking for the bump and saw it as he approached; it looked like it was fairly deep on his side of the road, so he headed the vehicle for the center or other side of the roadway, figuring it might not be as deep on the other side; he ''hit'' his brakes just before entering the bump when he saw how deep it was; as he came out of the bump he lost control of the vehicle; the vehicle traveled about 20 feet beyond the bump and turned over once, while it was still on the roadway; it went off a 10 foot embankment and came to rest against a telephone pole about 50 yards beyond the bump; both Greenup and Fuller were thrown from the vehicle.

Plaintiff Fuller testified that he lived with the defendant when he was in Alaska; he bought the Volkswagen new in February 1963, in Alaska; at the time of the accident the vehicle had been driven approximately 6,200 miles; it was in good mechanical condition; about three months before commencing the trip to California he discussed the matter with Greenup, as they both wanted to visit their respective parents

in California, ''And we decided to travel together since this would make the trip less expensive for both of us, and because we both wanted to go down about the same time.''

Fuller testified further that he paid for the cost of transporting his vehicle by ferry from Ketchikan to Prince Rupert, and paid for his passage on the ferry; Greenup paid for his own passage on the ferry; Fuller drove the vehicle from Prince Rupert to Smithers; Fuller paid for the gasoline purchased at both Prince Rupert and Smithers; Greenup took the wheel of the vehicle at Smithers and drove for approximately three hours before the accident occurred; Greenup drove normally during this three-hour period; most of the time he drove with his left hand at the 10 o'clock position on the steering wheel.

Fuller testified further that as they approached within a quarter of a mile or so of the place where the accident occurred, Greenup was driving at a speed of around 60 miles per hour; this had been more or less the speed at which he drove when the road was good; they had crossed places where the roadway was being worked on; Greenup would slow down at these places and go through them; there were other places where signs were posted ''Bump''; Greenup had slowed down at these places; as they approached the place where the accident occurred there were two signs; the first sign read ''Slow''; it was a red sign with white lettering; it was placed opposite the right shoulder of the roadway, and was 10 feet off the edge of the roadway; there was nothing which obscured the view of the sign; while approaching and passing the sign Greenup did not slow the speed of the car; as the car continued on there was another sign which read ''Bump 400 feet''; Greenup did not slow the car between these signs which was a distance of approximately 200 feet; as they passed the ''Bump'' sign they were traveling between 55 and 60 miles per hour; they approached and hit the bump at approximately the same speed; when the vehicle hit the bump the front end of the car leaped up approximately 10 inches to a foot; Greenup lost control of the vehicle after it crossed over the bump onto gravel and the car ''fishtailed''; Greenup tried to correct this twice by steering into the skid; he overcorrected and the car turned over; the car was headed mostly straight rather than at an angle when it hit the bump; in the process of Greenup trying to correct the skid, the car traveled approximately 25 yards and then it turned over; the car came

to rest approximately 40 yards from the bump, but down a 10 foot embankment and against a telephone pole.

On cross-examination Fuller testified that the condition of the highway between Prince Rupert and Smithers varied from very good to very bad; there were signs posted alongside the roadway bearing the word "Bump"; following such a sign he would come upon either a depression or a raised area in the roadway; he switched driving chores with Greenup at Smithers because he was getting tired; the accident occurred in a foothill type area; Prince George, which was east of Smithers, is located on a plain; the roadway at and approaching the area of the accident was characterized by open, gentle curves; the roadway was dry and the sun was shining; they were generally eastbound; the first sign encountered was approximately 600 feet from the defect in the road; the second sign was approximately 400 feet from the defect; the defect appeared to him to be gravel filled, raised approximately 6 inches above the grade of the roadway, with loose gravel on the highway for a distance of 10 to 15 yards beyond; the defect was approximately 2 feet wide, and ran the width of the roadway.

Fuller testified further on cross-examination that he first saw the defect when the vehicle was 200 feet from it; he had confidence in Greenup's judgment on whether the latter should use one or two hands while driving; Greenup had no difficulty in the driving of the Volkswagen before the accident occurred; nothing of an untoward or erratic nature had occurred respecting his driving before they arrived at this curve; Greenup was wide awake and Fuller was wide awake and alert; he did not caution Greenup to slow down as they traveled the distance between the two signs; he at no time, before the accident occurred, cautioned Greenup about the speed of the vehicle; he was not completely aware of the danger until they hit the bump; with the presence of the "Slow" sign and the "Bump" sign, he felt that a speed of 30 miles per hour would have been a safe speed; when he answered in his deposition that a speed of between 40 and 50 miles per hour would be a safe speed in negotiating that "S" turn, he was thinking more of the curve of the road without the presence of the signs or the torn up area.

## The Contentions and the Law

The defendant urges that (1) the trial court should have ruled as a matter of law that plaintiff was not a person

being transported for hire or gain; (2) the trial court erred to the prejudice of the defendant in giving certain instructions and in refusing others, and (3) the verdict is against the law and public policy of this state.

The law of British Columbia in effect at the time of the accident, applicable to motor vehicles, provided in pertinent part that "No action shall lie against either the owner or the driver of a motor-vehicle . . . by a person who is carried as a passenger in that motor-vehicle, . . . for any injury, . . . sustained by such person . . . by reason of the operation of that motor-vehicle . . . by the driver thereof while such person is a passenger on . . . that motor-vehicle . . . unless there has been gross negligence on the part of the driver of the vehicle and unless such gross negligence contributed to the injury . . . in respect of which the action is brought; but the provisions of this section shall not relieve (a) any person transporting a passenger for hire or gain . . . from liability for injury . . . to such passenger. . . . No final judgment shall be entered in any such action until the Court is satisfied upon evidence adduced before it that the driver of the vehicle has been guilty of gross negligence." (Motor Vehicle Act, § 71, ch. 253, Rev. Stat. British Columbia, 1960.).

Gross negligence has been defined generally as great or very great negligence. (*Cowper* v. *Studer* (1951) 2 D.L.R. 81.) It is conduct in which, if there is not conscious wrong doing, there is a very marked departure from the standards by which responsible and competent people in charge of motor cars habitually govern themselves. (*McCulloch* v. *Murray* (1942) 2 D.L.R. 179, 180.) It connotes conduct of an aggravated or reprehensible character which often accompanies (although it is not an essential ingredient of) that more common breach of duty which denotes the distinctive tort of negligence. It suggests the concept of aggravated negligence. (*Murdock* v. *O'Sullivan* (1943) 3 D.L.R. 773, 774; see *Simpson* v. *Monture* (1966) 56 D.L.R. 2d 349, 360.) The courts of Canada have consistently declined to give an exact definition of the term gross negligence and have treated it as a question of fact in each case.

It has been held that an agreement to share expenses on a trip for the mutual pleasure and benefit of the parties does not constitute an agreement to transport for hire or gain. (*Guerard* v. *Rodgers* (1942) 2 D.L.R. 646, 652; *Neufeld* v. *Prior* (1963) 38 D.L.R. 2d 718, 728.) California is in accord with this rule. (See *Ray* v. *Hanisch,* 147 Cal.App.2d 742, 749

[306 P.2d 30].)     When an automobile rider's status as a guest or a paying passenger is established beyond a reasonable dispute by uncontradicted evidence and the reasonable inferences to be drawn therefrom, the question of such status is one of law; otherwise it is a question of fact. (*Shapiro* v. *Bookspan,* 155 Cal.App.2d 353, 359 [318 P.2d 123]; *Stephan* v. *Proctor,* 235 Cal.App.2d 228, 231 [45 Cal.Rptr. 124].)

Here, the evidence without conflict shows that the plaintiff and defendant started upon the trip from Alaska to California for their mutual pleasure and benefit with the understanding that they would share the expenses of the trip. Applying the law of British Columbia to these facts, we are of the opinion that the plaintiff had the status of a guest in his automobile at the time of the accident.

Viewing the evidence in the light most favorable to the plaintiff, it discloses that Greenup was not familiar with the narrow road upon which the accident occurred nor was he familiar with the car that he was driving; he was driving at a speed of about 60 miles an hour and would slow the vehicle upon reaching places in the road that were being worked on; he came upon several of such places before reaching the scene of the accident; approaching the scene of the accident he passed an area where there were two warning signs; the first sign was red and white, and read "Slow"; he did not slow the vehicle as he approached and passed this sign; he did not slow the vehicle between the "Slow" sign and the sign which read "Bump"; this was a distance of approximately 200 feet; he was going between 55 and 60 miles per hour when he passed the "Bump" sign and did not slow up after he passed the "Bump" sign. This evidence, we believe, is sufficient to support a finding of gross negligence on the part of Greenup in the operation of the vehicle as defined by the law of British Columbia.

Alaska has no guest statute similar to that of British Columbia. The California guest statute[1] provides that no person riding in or occupying a vehicle owned by him driven by

---

[1]This is section 17158 of the Vehicle Code which reads: "No person riding in or occupying a vehicle owned by him and driven by another person with his permission and no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

another person with his permission, has any right of action for civil damages against the driver of the vehicle on account of personal injury to the owner unless the plaintiff in such action establishes that the injury proximately resulted from the intoxication or willful misconduct of the driver. This section has been held to apply to an owner who has given compensation for the ride. (*Patton* v. *La Bree,* 60 Cal.2d 606, 608 [35 Cal.Rptr. 622, 387 P.2d 398].)

When the application of the law of the place of the wrong would defeat the interests of the litigants and of the states concerned, California has not applied that law. (*Reich* v. *Purcell,* 67 Cal.2d 551, 554 [63 Cal.Rptr. 31, 432 P.2d 727].) In the instant case both the plaintiff and the defendant were domiciliaries of Alaska. The agreement under which they started on their journey to California was made in Alaska. It is reasonable to assume that the agreement was made in contemplation that their rights and liabilities would be fixed and resolved under the substantive law of their domicile where the agreement was entered into. It is unreasonable to assume that, having entered into the agreement in Alaska, they contemplated that their rights and liabilities thereunder would change and increase or decrease each time they crossed a sovereign border. The fact that the accident happened in British Columbia was a fortuitous circumstance. It might have happened in any other sovereign jurisdiction through which the route of their journey would have taken them. The state, in this instance the Province of British Columbia, of the place of the wrong has little or no interest in seeing that a person is compensated for such wrong when none of the parties reside there. A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile and plaintiff receives no more than he would had he been injured at home. Under the rule laid down in *Reich* v. *Purcell, supra,* we are of the opinion that the substantive law of Alaska should have been applied to the issues of liability and that it was error for the trial court to apply the substantive law of British Columbia to such issues.

Under Alaska law the defendant was liable for injuries caused to the plaintiff resulting from his negligent operation of the plaintiff's vehicle, and without regard to whether compensation was paid for the ride.

Defendant urges that the verdict is against the law and public policy of this state. He argues that Vehicle Code section 17158 and the interpretation placed thereon in the case of

*Patton* v. *La Bree,* 60 Cal.2d 606 [35 Cal.Rptr. 622, 387 P.2d 398], compels a holding that permitting recovery by plaintiff on the facts of this case would offend the public policy of this state. It was held not contrary to the public policy of this state to enforce the guest statute of Oklahoma in a tort action brought in California against the defendant, a domiciliary of California, where the accident occurred in Oklahoma and the law of Oklahoma imposed liability for ordinary negligence, whereas the guest statute then applicable in California imposed liability for gross negligence. (*Loranger* v. *Nadeau,* 215 Cal. 362, 366-367 [10 P.2d 63, 84 A.L.R. 1264].) Where the accident occurred in Arizona and Arizona had no guest statute such as the California guest statute, the substantive law of Arizona was applied. (*Scott* v. *Burke,* 39 Cal.2d 388, 391, fn. 1 [247 P.2d 313].) We are of the opinion that to apply the substantive law of Alaska to the rights and liabilities of the litigants in this action is not contrary to the public policy of the State of California; is not contrary to abstract justice, pure morals, or injurious to the welfare of the people of this state.

The defendant urges that the trial court erred in refusing to instruct the jury as a matter of law that the plaintiff was not a person being transported as a passenger for hire or gain and therefore the defendant owed the plaintiff the marginal duty to refrain from very great negligence. He also claims prejudicial error in the giving of an instruction in substantially the language of BAJI 209 but which was modified to use the language ''for hire or gain,'' contained in section 71 of the British Columbia Motor Vehicle Act. Defendant also complains that he was prejudiced by the trial court's refusal to instruct the jury substantially in the language of section 71 of the British Columbia Motor Vehicle Act heretofore quoted in pertinent part. In view of our conclusion that the substantive law of Alaska governed the issues bearing upon liability, we find no merit in these contentions. The two instructions refused related to the substantive law of British Columbia and if given would have stated the law more favorably to the defendant than he was entitled to have under the applicable law of Alaska. The instruction given stated the law under the British Columbia statute and was more favorable to the defendant than the applicable law of Alaska. In this state of the record the defendant suffered no prejudice.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.