[Civ. No. 12826.   Second Dist., Div. Three.   Apr. 30, 1942.]

MARGARET C. WHITTEMORE, Appellant, v. LOCKHEED AIRCRAFT CORPORATION (a Corporation), Respondent.

Mott & Grant, Howard A. Grant and Kenneth E. Grant for Appellant.

Joe Crider, Jr., and Jennings & Belcher for Respondent.

THE COURT.—This is an action for damages brought by the wife of Fred W. Whittemore, deceased, who came to his death in the crash of an airplane. Plaintiff appeals from a judgment of nonsuit. The sole question on the appeal depends on the character in which deceased traveled, whether as a guest (meaning a ''nonpaying'' guest), or as a passenger (meaning one who is not a nonpaying guest and who is not engaged in a joint enterprise).

The controlling law relating to liability is that declared in section 11½ of the California Air Navigation Act, which reads as follows: ''No guest riding in or upon any aircraft without giving compensation for such ride or riding in or

upon any aircraft while engaged in a joint enterprise with the airman flying the same shall have, nor shall any other person have, any right of action for civil damages against the airman flying such aircraft or against any other person legally liable for the conduct of such airman on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said airman." (Stats. 1929, p. 1874, as amended by Stats. 1933, p. 1135, Deering's Gen. Laws, 1937, Act 151.)

It is not questioned that plaintiff made out a case sufficient to go to the jury had negligence alone been the test of defendant's liability. There was no allegation of intoxication or wilful misconduct, and consequently no contention is made that the judgment of nonsuit was improper, unless the evidence was sufficient to have supported a finding that decedent was a passenger and not a guest.

The complaint alleged and the answer denied that decedent was invited by defendant to ride in the plane. Neither pleading specifically alleged whether he rode as a passenger or as a guest, and there was a minimum of evidence on this point. No reference was made to the "guest" statute until the motion for nonsuit, when it was cited by defense counsel, but the delay appears not to have been due to lack of their familiarity with it.

Our duty is to inquire whether the evidence and the inferences to be drawn therefrom under a construction most favorable to plaintiff would have justified a finding that decedent rode as a passenger. The facts before us are the following: the plane in question had been constructed by defendant at Burbank, California, for Northwest Airlines, Inc., with offices at Saint Paul, and was to be used as a passenger transport on the air lines of the latter company, which was engaged in business as a commercial carrier. Under the agreement of sale the plane was to be delivered at Las Vegas, Nevada. Decedent, Fred W. Whittemore, was vice president of Northwest Airlines, Inc. In connection with the sale, it had been arranged that Mr. Whittemore, who was a pilot, was to accept delivery of the plane for his company at Las Vegas, where papers were to be delivered showing transfer of title, and was to fly the plane from there to Saint Paul. He came to Burbank instead, and entered the plane at the airport with a pilot employed and designated by defendant to fly the plane to Las Vegas. The pilot reported his flight plan to the author-

ities, the plane left the airport, and shortly thereafter crashed in a mountainous area which was enveloped by a heavy overcast of fog or clouds.

The witness Louis W. Wulfekuehler, assistant secretary of defendant, testified that he knew that Mr. Whittemore was vice president of Northwest Airlines, Inc. He was asked and answered questions as follows: "Q. And on Saturday preceding the Monday on which the plane left Burbank you told Mr. Downes, did you not, that Mr. Wulfekuehler (sic: Whittemore) was to arrive in this city to go out with the plane and take delivery of possession and title at Las Vegas? A. If I recall correctly, I passed on to Pilot Downes the information that I understood that from Mr. Salisbury, that Mr. Whittemore would be here to accompany the plane at departure. Q. It was understood between Lockheed and the Northwest Airlines that Mr. Whittemore would be available at Las Vegas to take delivery; is that correct? A. That is my understanding, yes. Q. That was a part of the business arrangement between the two companies involved in this sale and purchase of the airplane; is that correct? A. Yes, sir." (Cross-examination): "Q. Mr. Wulfekuehler, did Mr. Whittemore pay any compensation to Lockheed Aircraft Corporation for the ride from Burbank? . . . A. None whatsoever." The president of defendant company testified that the company owned the plane on the day of the accident, May 16, 1938, that it had been fully completed and was deliverable and that it was to be delivered to Northwest Airlines, Inc., at Las Vegas; that a pilot had been detailed and authorized to make the flight. He further testified: "A. I did not actually know that this particular flight was going to be made at this particular time. Mr. Whittemore had taken delivery of all planes that we had previously delivered, and I knew that he was in town to take delivery of this plane. I did not know definitely that he got on the plane, or was on the plane, until after the unfortunate accident. . . . Q. Who would be in charge of fixing the time of the departure of this particular plane? A. I feel that the time [for departure of the plane] would have been settled by mutual agreement between the desires in this case of the customer, when he wished to get away, coupled with the policy of our flight department with respect to releasing the plane when it was proper for flight and when conditions were proper for it to depart."

The courts have not had occasion to construe the quoted provision of the California Air Navigation Act in its use of the word "guest" as designating one who pays no considera-

tion for the privilege of riding. It is assumed by counsel, quite properly we think, that resort should be had to the definitions and discussions of the guest status as found in the automobile cases. These are numerous and involve a multitude of different factual situations. Speaking generally, the basic question is, of course, whether the operator of the vehicle has been given compensation by another for the privilege of riding. This compensation may consist of any benefit of a tangible nature received by the former as a consideration for the ride. Obviously if the rider parts with nothing but goes along solely for his own pleasure or in pursuit of his own business and not in aid of the business of the operator or the common business of the two, he is a mere guest. Where the claimed compensation consists only of some business advantage or benefit which will accrue to the operator, in order to take one out of the guest class, it must be of a practical and tangible nature identified definitely with the business purposes of the operator of the vehicle. Sharing the expenses of an automobile trip taken for pleasure has been held not to be such compensation (*McCann* v. *Hoffman*, (1937) 9 Cal. (2d) 279 [70 P. (2d) 909]), although the contrary is true where there is a sharing of the expense of travel and the transportation is incidental to the business in which the parties are mutually interested. (*Peccolo* v. *City of Los Angeles*, (1937) 8 Cal. (2d) 532 [66 P. (2d) 651], 536-537.) In the McCann case it was said, at page 286, ''Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants.'' Following this line of analysis, it would seem to be proper in the present case to inquire first what was the ''motivating influence'' for allowing Mr. Whittemore to ride in the plane from Burbank to Las Vegas. Immediately we encounter difficulties on account of the meagerness of the facts which can be gleaned from the record. It is admitted that decedent did not *pay* anything for the ride, but defendant must be deemed to have received compensation if he was taken along because it was considered by defendant to be to its business advantage that he be taken to Las Vegas in the plane. The reasoning in *Piercy* v. *Zeiss*, (1935) 8 Cal. App. (2d) 595 [47 P. (2d) 818], would support this view. It was incumbent upon plaintiff to produce tangible evidence of each fact essential to establish liability and if there was no evidence which would

have justified a reasonable inference that the arrangement to take decendent to Las Vegas in the plane was intended to forward the business interests of defendant or the mutual business interests of both, the judgment of nonsuit must be upheld. We think there was such evidence.

The controlling facts are the following: the contract of sale was not in evidence but it appears that all of the details of the sale had been arranged, delivery and transfer of title to take place at Las Vegas, where the plane was to be accepted by Mr. Whittemore. While there was no evidence that decedent went to Burbank to inspect the plane or that he did inspect it, and no evidence that it was any part of the agreement of sale that he was to accompany the plane to Las Vegas, it does clearly appear that he was attending to the business of concluding the purchase and acceptance of the plane. It does not appear why he went to Burbank instead of directly to Las Vegas, that he was requested by defendant to do so, or what he did after his arrival at Burbank before he boarded the plane. It was a part of the business arrangement that Mr. Whittemore should be in Las Vegas to accept delivery of the plane. Of course if he had not gone there at all some other arrangement would have been necessary in order to make delivery. Obviously it was to the advantage of defendant, since Mr. Whittemore was in Burbank, that he be flown to Las Vegas in order to facilitate the closing of the business involved in the sale. But it appears that the arrangement that he would go to Burbank and accompany the plane to Las Vegas had been made at least as early as Saturday preceding the Monday when the flight started. It was on Saturday that Mr. Wulfekuehler advised the pilot who was supposed to take the trip that he had been informed by Mr. Salisbury, another employee of Northwest Airlines, that Mr. Whittemore would be in Burbank to accompany the plane at departure, and this arrangement was evidently satisfactory to the defendant. What was the advantage or benefit to defendant in Mr. Whittemore's going to Burbank to fly in the plane to Las Vegas instead of going directly to Las Vegas? It was not shown that he had to go to Burbank as a part of the transaction of the business either of his own company or that of the defendant. We may assume for the purpose of this opinion that Mr. Whittemore's plan, in choosing to go to Burbank, was in furtherance of his own wishes or those of his company exclusively and that if instead of going to Burbank he had gone to Las Vegas, the business purposes of defendant would

have been served equally well. We may even assume that Mr. Whittemore requested permission to accompany the plane from Burbank to Las Vegas. What, then, was the motivating influence which controlled the events which followed? Defendant was in the business of manufacturing and selling airplanes; Northwest Airlines, Inc., was its customer; Mr. Whittemore was the latter's vice president and pilot and was engaged in concluding a purchase for his company as he had done before. One or more of several inferences was allowable under the circumstances and each furnished a reason why the arrangement as made was to the business advantage of defendant. In the first place it was necessary that the purchaser should be satisfied that the plane was in condition for acceptance and it was, of course, desirable that this determination should be made before the plane had been removed to a great distance from defendant's factory. It might have been inferred that the arrangement as made was as much to the advantage of defendant as it was to the representative of its customer. Again, it was possible for the jury to infer from the testimony that regardless of Mr. Whittemore's purpose in coming to Burbank the defendant was transporting him to Las Vegas in order to facilitate his going there and insure his presence there to take delivery of the plane without delay on its arrival, thus ending defendant's responsibility for the plane, and that this was done, not as a matter of pure personal accommodation to him, but in furtherance of the business arrangement between defendant and the buyer. In another view of the relations of the parties it might be said that something more was involved between plaintiff and Northwest Airlines, Inc., than the mere sale of a single plane and that there was also the element of continued patronage to be considered. This was not the first plane defendant had sold to the same customer nor is there any reason for assuming that it was considered to be the last one that would be sold. There were established business relationships between the two companies and if in the course of that business Mr. Whittemore expressed a desire to fly in the particular plane in question from Burbank to Las Vegas, or at any other time or place prior to its delivery at the latter point, it is difficult to see how his proposal or defendant's acceptance thereof could be disassociated from the business between the two companies. There is nothing whatever to suggest a social relationship or that Mr. Whittemore or defendant looked upon the former's trip in the plane as one to be taken merely for

pleasure. Why should not a manufacturer of airplanes welcome an opportunity to exhibit and display his product to a customer? If it had been the demonstration of an automobile there would have been a consideration paid by the customer in accepting the demonstration or ride, which would take him out of the guest status. (*Crawford* v. *Foster,* (1930) 110 Cal. App. 81, 87 [293 Pac. 841].) What difference can it make that the case was one of an uncompleted sale and transfer of title of an airplane? And how can it be said that it was any less important to the defendant to maintain the good will of and to continue business with an established customer than it would have been to give a demonstration of a plane to a prospective new customer? In its essential features the transaction was one in which defendant was promoting its own business interests. Certainly if it be assumed that the request to take the ride came from Mr. Whittemore it is logical to assume that a refusal of that request by defendant might have been detrimental to a continuance of its business relationship with Northwest Airlines, Inc., and inconsistent with the promotion of defendant's business as a manufacturer of planes. It appears to us that more was involved in the arrangement than the mere transportation of Mr. Whittemore to Las Vegas to accept delivery of the particular plane, since, as we have pointed out, there are several tenable reasons why the jury could have discerned from the evidence a business rather than a social purpose as the motivating influence of the trip. The case of *Duclos* v. *Tashjian,* (1939) 32 Cal. App. (2d) 444, 450 [90 P. (2d) 140], which is later than the McCann case, is also persuasive to this conclusion. There it appeared that Duclos, who was a mechanic, was riding with Tashjian to look at a pump owned by the latter, for the purpose of determining whether he could repair it, and it was held that Duclos was not a mere guest, the court saying, ''The journey was not undertaken by Tashjian as an act of hospitality nor as a favor, but as a real and vital part of his own business with an eye to his own benefit. It was participated in by Duclos, not as a means of obtaining free transportation, but as an integral part of a business transaction. It may be considered as a distinct benefit to Tashjian as a step towards getting his pump repaired and put in operation.'' All of this, in effect, could be said of the present case. We think the court erred in granting the nonsuit.

The judgment is reversed.

Schauer, P. J., Shinn, J., and Shaw, J. pro tem., concur.

A petition for a rehearing was denied May 29, 1942, and the following opinion thereupon rendered:

THE COURT.—Respondent's petition for rehearing is denied. In making the order we wish to make our view clear, if it is not clear from the opinion, that the possible desire of defendant to maintain the goodwill of an established customer would have been a proper matter for the jury to consider in determining whether there was tangible benefit accruing to defendant in transporting the representative of its customer in connection with business in hand at the time.

Respondent's petition for a hearing by the Supreme Court was denied June 25, 1942.