465 P.2d 530

Mavis H. MIDDLETON, Administrator of the Estate of James L. Middleton, aka James LaMont Middleton, deceased, Plaintiff and Appellant,

v.

Adele R. COX, Administratrix of the Estate of Elmyrrh Leany Cox, deceased, Defendant and Respondent.

No. 11785.

Supreme Court of Utah.

Feb. 5, 1970.

J. Harlan Burns of Burns & Park, Cedar City, for appellant.

Bryce E. Roe, of Roe, Jerman & Dart, Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a summary judgment dismissing plaintiff's complaint. Affirmed, with costs to defendant.

The deceased Cox was a Civil Air Patrol pilot operating under the provisions of 10 U.S.C. §§ 8012, 9441,[1] when called upon to perform services denominated in the act. He was sought out to conduct an aerial search on the occasion of a lost plane in the area. In conducting such search, regulations required that an observer accompany the flight. The deceased Middleton, whose estate is represented by the plaintiff, *volunteered* his services as observer. Cox did not seek him out, select him, or authorize him to perform the mission. All such matters were under the control, authority and supervision of one Whitehead, Commander of the C.A.P. The whole set-up was something akin to a Sub-for-Santa organization, all of the participants volunteering and contributing their services to

1. Providing for air search and ground rescue, emergency and disaster relief, civil defense assistance funded only to reimburse members of C.A.P. for fuel, communications expenses, etc., but not for depreciation of private equipment, damage indemnity, personal services of members, etc.

be executed under the direction of a specific authority. There was no "employment" in the common connotation of that term. Certainly no union dues or profit motive is a factor in C.A.P.

The plane flown by Cox and one by Whitehead, rendezvoused at Bryce Canyon airstrip after an unsuccessful search. The battery in the Cox plane was and had been dead, a fact everyone knew. Middleton nonetheless turned down an auto ride home and decided to fly back with Cox when the latter said the plane was airworthy without the battery. The plane successfully took off. On the flight back, for some *unknown* reason Cox attempted to land in a meadow area. The under belly of the aircraft happened to strike a projecting volcanic rock, rupturing the gas tank, causing a fire that consumed the plane and its occupants.

The facts abstracted above seem to be conceded in the Statements of Facts incorporated in both of the briefs of the respective parties. They seem also to point out no salient circumstances pin pointing the efficient cause of the accident, or reflecting any liability free from pure conjecture. Significantly the facts mentioned were ad-

duced by an inordinately lengthy and all-inclusive discovery process largely through interrogatories put and answered by both sides. Counsel for plaintiff conceded at pretrial that there were no more facts to develop. Hence defendant's motion for summary judgment was well taken at that juncture for what it was worth.

On appeal, plaintiff urges that the trial court erred (1) in holding that Middleton was a guest and not a "paying" passenger under our areoplane guest statute;[2] (2) in holding Cox was not negligent under the facts; and (3) in holding that plaintiff's exclusive remedy, if one existed, was under the Workmen's Compensation Act (Title 35-1-60, U.C.A.1953).

As to (3): We are of the opinion that there was in no sense an employer-employee relationship under the facts of this case between Cox and Middleton. The matter was not raised by plaintiff but by defendant. We express no opinion as to rights or obligations other than those of the litigants here.

■ As to (1): We are convinced, after examining the record, that Middleton was not a "paying" passenger,[3] but was a

2. Title 2–1–33, Utah Code Annotated 1953, (Chap. 2, L.Utah 1953; 1969 Pocket Supp., Vol. 1, p. 102), which provides that one not paying for the ride who rides with an aeroplane pilot, cannot recover damages unless the pilot is guilty of intoxication or "wilful misconduct." (This statute differs from its counterpart, Title 41–9–1, U.C.A.1953, the auto guest stat-

ute, by using "payment" for the ride rather than "compensation.")

3. Plaintiff's contention that Cox was "compensated" because of Middleton's presence as observer, tenuously belies the provisions of the C.A.P. Act, and the realities of life. Whittemore v. Lockheed Aircraft Corp., 51 Cal.App.2d 605, 125 P.2d 531 (1942), an intermediate appeals case with

guest under the act. This being so, plaintiff had the onus of showing that Cox was intoxicated or guilty of wilful misconduct and that either or both caused the death. There is nothing in the record reflecting any consumption of intoxicants whatever. The record is equally devoid of any apparent or evidentiary matter pointing to any wilful misconduct indulged by Cox on this, essentially a mercy mission, where he, as well as his passenger, would be the victim of any action on his part included within the common connotation of the term, involving wilful disregard for the safety of others and himself.

As to (2): The claim that Cox was negligent under the facts: The trial court granted summary judgment on this issue, but permitted plaintiff to amend the complaint. The amendment only added that negligence was claimed and shown under the doctrine of res ipsa loquitur. The motion for summary judgment was renewed and again granted.

■ · Since it appears and we hold that Middleton was a nonpaying guest, plaintiff must show *wilful misconduct* to recover.

no top authority, is inapropos, simply indulging in a definitional discussion as to what might or might not be a quid pro quo. Smith v. Franklin, 14 Utah 2d 16, 376 P.2d 541 (1962), says that if the main inducement for the ride is payment, the guest statute does not apply. We do not quarrel with that conclusion, but there is no similarity here.

The doctrine of res·ipsa loquitur has to do with lack of ordinary care. Wilful misconduct cannot be shown under the doctrine, because a necessary ingredient for application of the rule is lack of *ordinary care*, not wilful misconduct.[4]

An interesting discussion of the doctrine and its application to air incidents is found in Cohn v. United Air Lines Transport Corp., 17 F.Supp. 865 (D.C.Wyo.1937).

■ The doctrine being inapplicable to the instant case, evidence must supplant allegation or conjecture to justify compensability. The evidence adduced by the interrogatories does not show carelessness on the part of Cox in the maintenance and/or operation of the plane. Contrariwise, one is impressed with the answers as showing the opposite. The only significant urgence by plaintiff that Cox may have been derelict, is his flying the plane with a dead battery, or flying too low for safety. Both contentions are speculative since under the facts of this case there is no evidence of any causal connection between the dead battery and the accident, and none to the effect that Cox was flying too low, or that

4. See Prosser, Torts, Sec. 42 under Res Ipsa Loquitur, where it is observed that "If a guest statute requires wilful * * * misconduct, res ipsa loquitur furnishes no proof of it"; and Phillips v. Noble, 50 Cal.2d 163, 323 P.2d 385 (1958), where it is said: "Obviously res ipsa loquitur, which permits the drawing of an inference that ordinary care was not used, cannot serve as a means of establishing intoxication or wilful misconduct."

this caused the accident. The answers to the questions indicate that the battery, although inoperative, did not prevent flying the search, landing at Bryce, or taking off therefrom,[5] and they also indicate that Cox was flying an approved, usual and conventional route home. There was evidence to the effect that the causa causans of the accident was a protruding, unobservable rock, in what appeared to be a meadow area. Beyond what has been said, there are hundreds of ways the aircraft may have been the subject of a forced landing, where the accident may have been completely divorced from any element of personal negligence, viewed in the legal atmosphere controlling the term.

We believe and hold that there was no genuine issue of fact to be decided, and that what the trial court had before it impelled the conclusion of nonliability as a matter of law.

CALLISTER and TUCKETT, JJ., concur.

CROCKETT, Chief Justice (concurring in the result):

It is extremely doubtful to me that it should be ruled as a matter of law that Middleton was a guest, and plaintiff's rights determined under the guest statute. A guest within the purview of that statute is usually understood to be one who is invited, either expressly or impliedly, to enjoy the hospitality of the driver of a vehicle; who accepts such hospitality; who takes a ride either for his own pleasure or his own business, without making any payment to or conferring a benefit upon the driver as compensation for the ride, other than the pleasure of the rider's company. See Smith v. Franklin, footnote 3 main opinion; Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287. In the instant case the driver Cox and the rider Middleton were each engaged in what may be regarded as a joint enterprise to perform a service for the benefit of someone else and at the request of third parties.

Notwithstanding the above, I concur in the result in this case. Even assuming that Middleton was not a guest, and that Cox should be held to the duty of ordinary care, under the facts disclosed, I am unable to see how the plaintiff could make out a case of negligence. This is true particularly because the immediate and therefore proximate cause was a protruding rock in the meadow, where the plane may otherwise have landed safely, which ripped open the gas tank, causing the explosion, fire and tragic consequences to all concerned. While I do not disagree with the application of the doctrine of res ipsa loquitur in airplane crash cases in appropriate circum-

---

5. Defendant observed in its brief that the battery is not necessary to sustain flight because the magneto performs that function.

stances, I do not see that the requirements of its application are met here.

ELLETT, Justice (dissenting):

I am constrained to dissent because I do not think the guest-host relationship can be made out between Cox and Middleton. The guest statute was enacted to protect car owners and plane owners from suits by those who were riding for free and for their own business or pleasure. The relationship partakes more of a social nature than of business.[1] Unless the element of "giving" a ride is involved, it is my understanding that the guest-host relationship is not established, and it is not necessary for the rider to pay money or property to the owner of the car or plane to make him a non-guest passenger.

For instance, in the case of Dorn v. Village of North Olmsted, 133 Ohio St. 375, 14 N.E.2d 11, the passenger rode for the purpose of pointing out a certain house to the driver, and it was held that he was no guest.

In another case a candidate for sheriff transported one of his supporters to a political rally, and it was held that the rider was not a guest.[2] The court said it would make no difference whether the candidate invited the rider to go or whether the rider requested permission to go.

In O'Hagan v. Byron, 153 Pa.Super. 372, 33 A.2d 779 (1943), the plaintiff rode with her sister in order to give an opinion on the condition of the health of their brother, and it was held that she was not a guest.

The case of Dobbs v. Sugioka, 117 Colo. 218, 185 P.2d 784 (1947), seems to be closely in point with the instant case. There the parties were employed by the same principal, to wit, a missionary society known as "The Plan." As such employees it was their duty to attend and to report certain conferences. The defendant, Dobbs, was permitted but not compelled to furnish the transportation, and if he did so, The Plan would pay the expenses if he transported another employee. If he did not transport another employee, he had to pay his own expenses. In holding that Sugioka (Dobbs' secretary) was not a guest, the court at page 786 said: "The conference at Casper was presumably of direct benefit to the Plan, hence to these parties as its employees. It follows that plaintiff was no guest."

In the case of Scholz v. Leuer, 7 Wash. 2d 76, 109 P.2d 294 (1941), the defendant got consent of the mother of a 14-year-old girl to let her accompany him while he was delivering papers, on the representation that he needed help because of unfamiliari-

1. Swinney v. Roler, 113 Ind.App. 367, 47 N.E.2d 846.

2. Delk v. Young, 35 N.E.2d 969 (Ohio App.).

ty with the route. The girl was killed, and in the case the court at page 300 said:

> * * * I think it is very clear that she was not merely a guest, but she was a helper. She was doing a service which this young man desired to have her do, even though childlike she might have been ready and willing to get up at midnight and go on a not very exciting or exhilerating journey.

McGuire v. Armstrong, 268 Mich. 152, 255 N.W. 745 (1934), was a case where plaintiff's wife was being transported by a county nurse to Grand Rapids for the purpose of having some glasses fitted after having had a cataract operation. Neither plaintiff nor his wife was paying for the ride nor for the operation. The nurse drove across the center of the highway in a foggy area, and plaintiff's wife was killed. In affirming a judgment for the plaintiff the court at page 747 said:

> The consideration need not pass from the passenger to the driver. If the driver receives a direct benefit from another, the service is not gratuitous and there is no guest relationship. Mrs. Armstrong admitted that it was her duty as a county nurse to bring patients to various clinics in Grand Rapids. It is reasonable to infer that the transportation of such passengers as the deceased was within the course of defendant's employment. * * *

In the case now on appeal both Cox and Middleton were donating their time and services to the worthy purpose of attempting to locate a lost plane. Cox owned his own plane and was being reimbursed by C.A.P. for expenses incurred in connection with the flight. It is customary that "observers" be in each plane flown on such missions for the reason that the pilot must watch where he is going and keep within his allotted territory for the search. The purpose of taking his plane into the air was to locate a wrecked plane, and Middleton by his observation was contributing to the very purpose of the flight. I do not believe the court was justified in holding that the guest-host relationship was controlling.

As to the negligence of Cox, the contention is made that the motor was too small for the plane and that the wrong type of propeller was used. In addition to these specific allegations of negligence, the plaintiff also relied upon the doctrine of res ipsa loquitur.

It seems to me that a jury question is raised by the mere fact that Cox wrecked his plane on the top of a mountain. Ordinarily a plane does not crash in the absence of negligence—either in the way it is flown or in the failure to keep it in an air-worthy condition. Here Cox was in complete control of the plane, and it seems to me the rule of res ipsa loquitur would prevent a summary judgment for Cox.

**50**

This belief is induced by the following statement taken from Prosser, Law of Torts, Hornbook Series (3rd Ed.), Sec. 39, beginning on page 220:

> * * * The earlier cases dealing with aviation took the position that there was not yet such common knowledge and experience of its hazards as to permit such a conclusion from the unexplained crash of a plane. With rapid technological improvement, the position began to change; and all of the later cases now agree that the safety record justifies the application of res ipsa loquitur to such a crash, or even to the complete disappearance of a plane. * * *

The concurring opinion of the Chief Justice indicates that as a matter of law there is no negligence unless the pilot could or should have seen the very rock which ripped open the gas tank and caused the fire.

The very act of crash landing a plane would be negligence unless the crash landing was compelled by circumstances over which the pilot had no control. It is, therefore, necessary to look back of the crash landing to see if there was negligence on the part of the pilot which compelled him to attempt it.

I would reverse the case and remand it for trial. I think costs should be awarded to the plaintiff.